# CHARLESTON.

HARNER *et al.* v. MONONGALIA COUNTY COURT *et al.*

Submitted May 8, 1917.   Decided May 22, 1917.

1. HIGHWAYS—*County Courts—Establishment of Roads—Constitutional Provisions.*

The power conferred on county courts by §24, art. 8 of the constitution as to the establishment and improvement of public roads is, when exercised within the limitations prescribed by law, supreme and beyond control by citizens and taxpayers.   (p. 629).

2. SAME—*County Court—Road Improvement Funds—Application.*

Funds for public road improvement, authorized by electors under the sanction of §8, art. 10 of the constitution and chapter 43 of the Code, and placed under the control of the county courts, are popular grants of money for definite purposes, and can not be disbursed or applied otherwise than upon the conditions prescribed by the electorate, but must be devoted exclusively to the improvement of the roads designated and defined in the order of submission.   (p. 630).

3. SAME—*Road Improvement—Departure from Record.*

The expenditure of funds so created to improvement of a road not in existence and not contemplated by the voters, when consenting to be taxed for payment of the bonded indebtedness, is wrongful where the new road proposed to be improved constitutes a material departure from the route designated by them.  A variance of 750 feet from the route prescribed by the voters, and parallel with it, for a distance of half a mile, is permissible only where the departure obviously is necessary and imperative.   (p. 630).

4. SAME—*County Courts—Application of Road Money—Equitable Jurisdiction.*

Equity has jurisdiction to restrain the application of the funds to the improvement of the substituted route.   (p. 630).

5. SAME—*Location of Road—County Court—Alteration.*

Power granted to alter locations to correct alignment and grade of roads set apart for betterment under a submission to the electorate does not authorize the substitution of a new route for one intended by the electors, when the county court has avowed its intention not to apply any portion of such funds to the improvement of the old route.   (p. 630).

Appeal from Circuit Court, Monongalia County.

Bill for injunction by Luther V. Harner and others against

the County Court of Monongalia County and others. Decree for defendants, dissolving the injunction and dismissing the bill, and plaintiffs appeal.

*Decree reversed, and injunction reinstated and perpetuated.*

*John W. Mason* and *Lazelle & Stewart,* for appellants.

*Goodwin & Reay* and *Glasscock & Glasscock,* for appellees.

LYNCH, PRESIDENT:

To the voters residing in Morgan district, in which is included the city of Morgantown, the county court of Monongalia county, in response to the request of a petition addressed to it signed by the requisite number of persons having the essential qualifications, submitted for approval or rejection the question of authorizing the county court, in the name of the district and as chargeable to it alone, to create an indebtedness of three hundred thousand dollars by the issuance and sale of county bonds, the proceeds of the sale to be devoted and applied to the permanent improvement of certain public roads of the county within that district. At an election held and conducted in the manner required by law, upon a notice duly published and posted as likewise required, the electors who on September 18, 1915, exercised the elective franchise, approved, by a majority largely exceeding that by statute made a condition precedent to the right of the court so to encumber the property of the district, the proposition to bind the property, and consented to be taxed to raise the amount required to pay the annual interest to accrue on the debt and to create a sinking fund to liquidate it within thirty four years from the date of the bonds, that date being January 1, 1916. The bonds have been issued and sold, and the proceeds of the sale placed in the possession or under the control of the sheriff of the county, subject to the payment of such orders as the county court may lawfully issue chargeable to that fund, but to be applied to accomplish the purposes of its creation and to no other purpose.

The petition, order of submission, and notice of the election definitely prescribed, designated and defined the eleven roads

to be improved by the outlay and expenditure of the fund derived from the bond sale. They are numbered in consecutive order, the description and designation of each one of them being introduced by the phrase "the road known as". The only one of the eleven involved in this litigation is the one designated as ninth; and it is defined, described and identified in the petition, submission order and election notice as "the road known as the Deckers creek road, beginning at the end of the pavement on Brockway within the city limits of Morgantown, and running by way of Deckers creek bridge by the sulphur spring across the bottom to the intersection with the Sabraton road a distance of 1.9 miles". Pool's Rocks is an intermediate point; and the sulphur spring is located between Pool's Rocks and the intersection of the Deckers creek road with the Sabraton road.

By the bill, the allegations of which are not denied by the county court upon the question of the identity of the roads to be improved but by it admitted to be true, plaintiffs, who are residents, voters and taxpayers of Morgan district, and who, for the purposes of travel, use the Deckers creek road in going to and from Morgantown, the county-seat and business center of Monongalia county, charge that, instead of taking the necessary steps to appropriate and expend a ratable share of the proceeds of the bond issue to the permanent improvement of the Deckers creek road the entire distance between the end of the pavement on Brockway to the intersection of that road with the Sabraton road, the county court has avowed its intention and purpose and has entered into a contract to improve permanently only that part of the road known as the Deckers creek road which is located and by the public used and occupied as a highway between Brockway and Pool's Rocks, and not to appropriate or expend any portion of such proceeds for the improvement of any part of that road between Pool's Rocks and its intersection with the Sabraton road, a distance of approximately half a mile; and that the county court likewise has by its order declared and avowed its purpose and intention to adopt, and has adopted, for permanent improvement, by the appropriation and expenditure of the necessary part of

the funds so created, another and different route from Pool's Rocks to the Sabraton road. And plaintiffs charge that, unless restrained or inhibited by injunction or other legal process, the county court will not devote any part of that fund to the improvement of that part of Deckers creek road used by the public between Pool's Rocks and its intersection with the Sabraton road, but will devote such portion of that fund as may be necessary permanently to improve the new route selected by the county court for improvement between Pool's Rocks and a new intersection with the Sabraton road.

The circuit court denied the injunctive relief prayed for in the bill when presented upon an application therefor, but members of this court later did award the writ under the authority of §7, ch. 133, Code; and the circuit court, upon a final hearing of the cause on its merits, after full proof, dissolved the injunction and dismissed the bill. The cause is now here upon appeal for final determination, upon a motion to reverse the decree of dissolution and dismissal, as allowed by §26, ch. 135, Code.

The proposed departure from the route and roadway of the Deckers creek road the county court 'defends on constitutional and legislative grounds, coupled with the twelfth paragraph of the petition, submission order and election notice. That tribunal cites and relies on §24, art. 8 of the constitution to sustain its action in the premises. The provisions of this section, it is true, confer on county courts, "under such regulations as may be prescribed by law", the superintendence and administration of the internal police and fiscal affairs of their counties, including the establishment and regulation of roads, with authority to lay and disburse the county levies. But the qualifying clause quoted is significant and material. The manner of the exercise of the constitutional grant, by the grant itself, is made subject to legislative regulation, and hence is not absolute and unconditional. The exercise of the power may be regulated, limited and restricted in such manner and to such extent as the law enacting department of the state government may deem wise, prudent or necessary, without impairing or unduly restrict-

ing the grant itself. *State* v. *County Court,* 60 W. Va. 339; *State* v. *Harden,* 62 W. Va. 313.

But it is difficult to perceive that any constitutional question arises in this controversy. The theory, scope and purpose of the bill preclude the possibility of an intention or purpose to intrude upon or interfere with any right vested in the county court to perform any duty or exercise any power entrusted to it exclusively by the supreme law of the state. The injunction awarded and dissolved does not purport to inhibit or interfere with the action of the county court in ordering the establishment of a road where none theretofore existed; and no allegation of the bill assails as unlawful, or in derogation of the rights of the plaintiffs, any action taken or proposed by that tribunal in the establishment of new ways of travel. But the bill does assail as wrongful and unwarranted and in derogation of such rights the action of the county court in so far only as it attempts to divert a part of the proceeds of the bond sale to the improvement of a road not contemplated by the voters and taxpayers when they authorized the indebtedness on behalf of the district and gave their consent to be taxed to liquidate the liability assumed. It is of this diversion, and not of the establishment of the new route, that plaintiffs complain. Such is the tenor, gravamen and purport of that pleading. To defeat the avowed purpose and intention to appropriate and expend part of the proceeds of the bond issue to improve a route not within the definition and subscription contained in the petition and the published order of submission and notice of the election for the bond issue, and not to appropriate any portion thereof to the improvement of that part of the Deckers creek roadbed between Pool's Rocks and the present intersection with the Sabraton road, is the ostensible aim and object of the bill.

What has been said as to the constitutional question answers fully, as we think, the further proposition, contended for on behalf of defendants, that the only right of redress the plaintiffs have is by resort to a remedy other than by an injunction. This contention resolves itself into the question as to the lawfulness and unimpeachable character of the ac-

tion of the county court in the performance of the duties and functions assigned to it by §56a20, ch. 43, Code. This section empowers county courts of the several counties of the state to establish or alter the public highways within their jurisdiction and control. The proceedings necessary to effect and consummate the establishment and maintenance of a road where none theretofore existed, or the alteration of one theretofore established and maintained, that section definitely points out and prescribes. The initial steps may be taken either upon the petition of persons interested in the establishment of a new highway, or the alteration of an old one, or by the county court upon its own initiative. Through resort to the latter method, it is said, the change in the route of the Deckers creek road was effected; from which the conclusion is drawn that the county court may lawfully and properly improve the changed location in lieu and instead of the old route, and for this purpose appropriate and apply the funds voted by the district for road improvement. But, as we have said, it is of the exercise of the avowed right and purpose of the county court to expend for the benefit of one road a fund designed to improve another that plaintiffs complain, not of the performance of the duties conferred by the statute cited. There is no power or authority in the county court or any other tribunal to apply a fund to a purpose other than that for which it was ordained and created by a vote of the people. As to the application of such a fund the will of the electors is supreme. Without their consent no debt can be imposed upon them, no liability assumed and no money raised or appropriated by the county tax levying bodies beyond the limitation prescribed by law. With the levies when made in a lawful manner, for ordinary and legitimate purposes, the taxpayer can not interfere. But when he has consented to be taxed beyond that limit, and empowered his public agent to collect and expend a fund for the accomplishment of an object not within the power of such agency without his express authorization, the fund, when raised, can not be appropriated and expended otherwise than as ordained by him; and to prevent its misappropriation or diversion equity will grant relief by

injunction. *White* v. *County Court,* 76 W. Va. 727; *Brown*
v. *County Court,* 90 S. E. 166.

The determination of the important and material inquiry
depends upon the proper interpretation of the twelfth par-
agraph of the petition, submission order and election notice.
On its provisions defendants base the power and authority
to make the proposed departure in the way to be improved
and the application of the trust fund to the improvement
of the new route. That paragraph, applicable alike to all
the roads so specified and delineated, provides "that the
grades and location of the roads to be improved be changed
whenever necessary and possible to improve alignment or
grade, and that the same be done under competent engineer-
ing supervision, according to modern methods". The pro-
vision for changing grades and location when necessary to
improve alignment and grade, it is contended, empowers the
county court to make or cause to be made the departure from
the original Deckers creek route and to improve the new
rather than the old route.

To justify this departure from the old route, and the pro-
posed diversion of the proceeds of the authorized bond issue,
much proof was taken and filed upon the question of the
comparative adaptability and feasibility of each route, the
economy in the preparation and subsequent maintenance of
each of them, and the number of persons to be accommodated
and the safety to the users. Though it is thus made to appear
that to improve the new route will necessitate the expendi-
ture of less money than will the improvement of the old one,
because of difference in the lengths of the routes and the
cost of the preliminary work to be done to fit either of them
to receive the improvement, there is a contrariety in the views
and conclusions of witnesses who testify as to the probable
permanency of the improvements on either location and the
comparative safety of each one for public use after the im-
provement is made. There is apparently, however, an ele-
ment of instability in each route, due to the character of the
ground and the nature of the material convenient to make
the necessary substructure for the roadbed when completed
as contemplated, and in the quantum of danger to travel on

the old route due to the railroad crossings at grade, and on the new one due to a like danger from the active operation of a mine tipple and a railroad switch and "Y". But whether upon the questions of feasibility, adaptability, safety and economy the proof preponderates in favor of one or the other of these ways need not be determined, if from the description furnished we can see that the voter intended when approving the proposed bond issue to prescribe definitely the roadway to which he desired the expenditue of the fund thereby raised should be applied, and that his mandate was such as to require adherence to the route he specified. The court can not disregard his will and command. He is the sole arbiter upon the question of location.

In order to ascertain and appreciate more fully the scope, purport and meaning of the twelfth paragraph, and when ascertained to give it the interpretation to which it is entitled in determining the legality of the proposed alteration, it is necessary, first, to inquire what induced the approval of the proposed indebtedness, and what were the motives of the electors when voicing their consent to the creation and application of the fund voted by them. Did they so far identify the route as to show a purpose to limit the expenditure of the money appropriated to the improvement of a definite and practicable route, or grant permission to substitute a route other than the one they approved? What are these marks of identification as to the locations in controversy? They are (1) "the road known as the Deckers creek road"; (2) the termini of the route—"the end of the pavement on Brockway" and the "intersection with the Sabraton road"; (3) "road running by way of Deckers creek bridge"; (4) "up Deckers creek and by the sulphur spring"; (5) "across the bottom to an intersection with the Sabraton road"; (6) "a distance of about 1.9 miles". With this description before him and these marks of identification, a traveler unacquainted with the location of the Deckers creek road could readily and easily find his way from Brockway to the Sabraton road. With the same marks of identification before him, the elector who by his ballot gave expression to his willingness to encumber by taxation the property owned by

him in Morgan district could not, if intelligent, fail to understand with certainty and exactness the identity of the road to the improvement of which he was willing to contribute. He could not have had in mind any other route than the old Deckers creek road—one used and recognized and devoted to public travel more than three quarters of a century; because no other road up that creek had any actual or potential existence as a highway. Indeed, no other road was contemplated along that route or near to it, so far as he knew, on the date of the election; and, so far as disclosed, none was contemplated by the county court or by any voter of Morgan district at that time. Nor is there any such other road there now, or in contemplation except by the county court. Furthermore, the petitioners and voters adopted the "sulphur spring", well and generally known both within and without the Deckers creek community for the medicinal properties of its water, as an important guide and factor in the designation and prescription of the road to whose rehabilitation and betterment they desired to contribute; and although the natural flow may have abated, and the water therefrom now is obtained only by the employment of artificial means, the spring is still a point of great notoriety in Morgan district. These facts and this condition and situation as to the route of the Deckers creek road inevitably lead to the conviction that the purpose of the voters was to procure the improvement of the route clearly identified by these points of demarcation and delineation.

But it is contended that the proposed new location merely corrects alignment and grades, in conformity with the authority conferred by paragraph twelve. The word "alignment" reasonably can not be given a definition sufficiently broad and comprehensive as to permit such a radical departure as that proposed by the county court. It means an adjustment to a line, or the state of being so adjusted. Or, as defined in *Chester* v. *Leonard,* 68 Conn. 507, it "signifies not only the act of adjusting to a line but the state of being so adjusted, and in terms of engineering is used to denote the ground plan of a road or other work as distinguished from its profile". The profile of a road is a drawing showing its

outline or contour, or a vertical section of ground along a surveyed line or graded work. Webster's New Int. Dict. While the authorized meaning of the word "alignment" as used in paragraph twelve contemplates changes in the line of the Deckers creek roadbed, that meaning can not be expanded or enlarged to permit the establishment of a new road wholly different from the one the electors had in mind. A road 750 feet from the Deckers creek road can not reasonably be said to improve the alignment in the route of the latter road; certainly not when that road is not to be permitted to participate in the fund voted to improve it. It will continue to exist without improvement in alignment, by changes in grade, or by the expenditure thereon for any purpose of money derived from the sale of the bonds. Paragraph twelve can not be construed to mean such changes in the grades and alignment as will result in the establishment of an essentially different route.

But it is contended on behalf of the county court that the decision in this case is controlled by *White* v. *County Court of Mercer County,* 76 W. Va. 727. While there is some similarity in the facts involved in the two cases, they are nevertheless so materially different that neither controls the other. In the Mercer county case there were two bond issues. The roads to be improved were not described with precision except by termini. The intermediate points or stations were disclosed only by indirect reference to roads theretofore relocated and established and let to contract for completion in accordance with plans provided therefor. There was no manifest limitation upon the authority to make changes and alterations in the roads to correct alignment and grades as they existed at the time of the election.

Electoral decision and determination upon important and pertinent questions naturally arising upon a proposition to create a public debt, not within the scope of the powers conferred by chapter 43 of the Code, prescribes a limitation or boundary beyond which the levying body can not proceed, except where precision is lacking as to the roads to be improved, as in *Brown* v. *County Court,* 90 S. E. 166; or as illustrated in *Lawson* v. *County Court of Kanawha County,*

80 W. Va.

the opinion in which is rendered contemporaneously with this one, where the order of submission of the proposed bond issue contained the provision that the county court would not enter into a contract for the improvement of the road described by the expenditure of the money appropriated for that purpose except on the concurrence of an advisory committee, to be composed of persons whose names were given in the order, and wherein this court refused to disturb a decree of the lower court enjoining the prosecution of the work contracted for by the county court without the concurrence of such committee. Only when the electors leave open for subsequent determination some essential factor or element not submitted to a vote, can that tribunal act without special authorization, as held in *Brown* v. *County Court,* cited. The proceeds of a bond issue for the improvement of roads definitely designated in the order of submission and then existent can not lawfully be applied to the improvement of a road clearly not contemplated by the voter or intended by him as one to the betterment of which he consented to become liable.

So strict and rigorous has been the interpretation of applications for the establishment or alteration of roads or streets that a departure of a few feet from the terminus designated in the petition will constitute a sufficient cause for refusing to adopt the location prayed for. *In re Union Township Road,* 29 Pa. Super. Ct. 179, held invalid a departure of 142 feet; in *Shinkle* v. *Commissioners,* 58 Ill. 422, the "difference though slight" avoided the entire proceedings establishing the road. In *Deer* v. *Commissioners,* 109 Ill. 379, it was said that while by statute defendants had authority to make changes along the course of the route they had no authority to change the termini. See also *State* v. *Barnett,* 14 N. J. L. 385. In *Flanders* v. *Colebrook,* 51 N. H. 300, a change establishing a terminus one hundred rods from the point named in the petition rendered the proceedings invalid. By a special statutory enactment was conferred upon Marion County, Tennessee, the power to issue bonds to improve eight public roads of the county. The commissioners entrusted with the work, after expending part of the fund raised, found the

amount insufficient to complete the improvement of the number of highways designated and specified, and undertook to devote and apply the residue of the fund to the improvement of what was essentially a new route not so mentioned. The court, in *Pope* v. *Dykes,* 116 Tenn. 230, held that the consummation of the attempt would operate as an unlawful diversion of the fund from the purposes for which it was appropriated, and enjoined such diversion. *Dahlin* v. *Neslund,* 147 N. W. 240, held that although the town board might under the statute of Minnesota exercise reasonable discretion in varying the route proposed in the petition, as public interest might require, the road order must adhere substantially to the petition as to the point of beginning, general course and point of termination, but held fatal a variance of thirty rods from the point of termination. ''The order laying out the road must conform with substantial accuracy to the description contained in the petition''. 1 Elliott on Roads and Streets, §380. If a departure from the route designated by the petitioners in proceedings for the establishment of roads under the general law is sufficient to defeat the establishment, as held in the cases cited, the legitimate and unavoidable conclusion is that a more imperative necessity requires strict adherence to the route prescribed for roads by voters who consent to the expenditure of a fund by them specially set apart and committed to the county court as their agent for no purpose other than the permanent rehabilitation and betterment of the roads specifically designated and prescribed for improvement.

For the reasons assigned, we sustain the motion to reverse, and reverse the decree dissolving the injunction and perpetuate it in the form, to the extent and for the purpose prayed in the bill.

> *Decree reversed, and injunction reinstated and perpetuated.*