# CHARLESTON.

H. L. GOODMAN *et al.* v. COUNTY COURT OF FAYETTE COUNTY.

Submitted September 8, 1920.    Decided September 21, 1920.

HIGHWAYS—*Courts Will Look to Petition for Bond Issue and Require Construction of Roads in the Order Therein Designated, Unless Submission Order Indicates a Contrary Intent.*

Where a petition to a county court, praying submission to the voters of the county or district of a proposal for the construction and improvement of certain roads therein enumerated and for the issuance and sale of bonds to provide funds therefor, expressly designates the order in which such roads are to be constructed, and the submission order of the county court is silent in that respect, but repeatedly. refers to the petition and indicates a purpose to follow closely its provisions, courts, in order to remove the doubt and uncertainty resulting from the omission, which must be solved when the proceeds derived from the sale of the bonds are not sufficient to cover all the work proposed, some of which necessarily will remain undone, must and will look to the petition to ascertain the purposes therein disclosed, and require conformity to the order of construction therein expressed, so long as there is nothing in the submission order indicating a contrary intent.

(WILLIAMS, PRESIDENT, absent.)

86 W. Va.

Case Certified from Circuit Court, Fayette County.

Suit by H. L. Goodman and others, as citizens and taxpayers of Quinnimont district, Fayette county, on behalf of themselves and other voters, for an injunction against the County Court of Fayette County. Demurrer to bill overruled, and the ruling certified.

*Ruling approved, and cause remanded.*

*Osenton & Lee,* for plaintiffs.

*George Love,* for defendant.

LYNCH, JUDGE:

By the bill, plaintiffs, who are voters and taxpayers of Quinnimont district, Fayette County, suing on behalf of themselves and others also voters of the district, pray for an injunction against defendants and for other general and special relief. Questions arising upon the sufficiency of the bill, subjected to demurrer which was overruled, the circuit court of its own motion certified here for review and decision, on the supposition that the approval of the ruling is the equivalent of an adjudication upon the merits of the controversy, and sustains plaintiffs' right to the injunction awarded in vacation by two members of this court after the circuit court had refused it.

At a special session of the county court of Fayette County there was entered of record, May 5, 1919, an order filing a petition signed by the five plaintiffs and 368 other voters of Quinnimont district praying for the submission, for the approval of the voters, of a proposal to bond the district to the extent of $194,000, the proceeds of the issue, if authorized, together with any fund, state or federal, appropriated and available for the purpose, to be used and applied solely to the construction, establishment and general betterment of the roads of the district, "in the order hereinafter named, being: (1) A road to be constructed, beginning at the Sewell Mountain district line at a point near the town of Thurmond, up New River parallel with the Chesapeake & Ohio Railway to the town of Quinnimont, a distance of about eleven (11) miles; (2) the public road from Quinnimont to Crickmer, a distance of about ten (10) miles; (3) the public road from Crickmer by way of Meadow Bridge to Springdale, a distance of about eight (8)

miles; (4) the public road from Springdale to the Greenbrier County line, a distance of about three (3) miles;" subject to alteration or change of location, by the county court, of any of the roads named "so as to obtain a better grade or alignment, or to reduce the cost of construction and maintenance."

After filing the petition and before granting the prayer for the submission, the court, as required by statute, directed defendant J. K. McGrath, the county road engineer, to make a preliminary examination of the roads designated and estimate and report the probably cost of the construction and improvement of the same, "as set forth in said petition," and required him to submit the result of the investigation to the State Road Commission for its approval. With these requirements McGrath complied, and the court filed the report with the Commission's favorable indorsement thereon.

Thereupon the court decided to and did submit all questions concerning the bond issue so proposed, and the voters consented by more than the required three-fifths majority to be taxed in the amount stated in the petition, and thereby pledged the property of the district as security therefor, having in view the purpose of the construction and betterment of the roads so described and identified.

Though every order of the court made prior to the actual ascertainment of the result of the election, including the order filing the petition and directing the county road engineer to investigate the roads therein described, the report of the engineer approved by the Road Commission, and the order submitting the proposal to the voters of the district, showed the numerical order of the roads set apart for improvement by the expenditure of the proceeds of the bonds and other available funds, none of them contained the words, "in the order hereinafter named, being," as they appear in the petition immediately preceding the designation of such roads. These words the county court disregarded when it finally decided upon the application and expenditure of the money so to be raised and appropriated, and instead elected to be governed and controlled by a majority vote, almost unanimous, of the advisory committee; and, yielding to them, ordered that the construction work should begin at Prince and extend to the Greenbrier County line. Nowhere

else in this proceeding is there mentioned any road that entirely corresponds with this description. "Prince" appears for the first time in this order of the court. There may be and perhaps is a town or village by that name on or near one of the roads so enumerated and identified. The bill disclosed the location of Prince to be about one mile west of Quinnimont and between that town and the Sewell Mountain district line where the petition called for work to begin. Assuming it is on the road from Sewell Mountain to Quinnimont, if the order of the county court is valid, only one mile of the eleven miles of road designated in the petition as first in order will be built, as it is admitted that the funds provided by the bond issue are insufficient to pay for the construction of all the designated road sections. Of the execution of this order and the advertisement for bids by road construction contractors, as required by law, plaintiffs complain and seek to enjoin it as without authority of law.

As noted above, the petition expressly provides for the expenditure of the proceeds derived from the sale of the bonds in the construction, establishment and permanent improvement of the district roads "in the order hereinafter named, being," first, the eleven-mile section of road beginning at the Sewell Mountain district line, at a point near Thurmond, thence up New River, parallel with the Chesapeake & Ohio Railway, to Quinnimont; followed by three subsequently named sections extending from Quinnimont to the Greenbrier County line and aggregating about 21 miles. The petition contains a further provision authorizing "alteration or change of location of any of said roads," by the county court, "so as to obtain a better grade or alignment, or so as to reduce the cost of construction and maintenance." But this clearly contemplates only changes of location of the roadbeds along the different routes, not of the order in which the roads are to be built.

The report of the county road engineer in its opening sentence contains this reference to the petition: "I have made a reconnaissance survey of the proposed improvement of the following roads in Quinnimont district, as described in the petition filed * * * by the voters of Quinnimont district for the improvement of said roads," followed by a designation thereof in the

same order and language as set forth in the petition, omitting, however, the phrase hereinbefore quoted.

The published order of submission, pursuant to which the vote was taken, after setting forth the report of the county road engineer, contains these provisions, the italics being ours: "Now, on this day, after mature consideration of said petition, the court is of opinion that *the request of said petition should be granted, and the court doth hereby grant the same;* * * * and the county court deems it desirable * * * that the proceeds arising from said bonds should be used in establishing, locating, relocating, grading, draining, building, constructing and improving generally and permanently * * * *as requested in said petition, and for no other purpose."*

"The proceeds arising from the sale of said bonds shall be used by said county court in establishing, * * * constructing and improving * * * the public roads named in the petition and as outlined in the engineer's report *approximately in accordance with the plan therein suggested."*

"The county court understands and doth so order that the description of the roads herein contained is a general outline of the roads to be constructed from said bond fund, and this system as to location and extent is dependent upon and subject to the knowledge secured by further investigation, engineer's report, etc., and as may be approved by the State Road Commission; and further, any road may be changed as to location from point to point or from place to place, when by doing so greater economy of construction is secured, or greater good to the citizens of the county and to the state can be obtained."

The provision last quoted merely gives effect to a similar provision in the petition and relates only to changes of location, not to the order of construction. Though neither the engineer's report nor the submission order contains a clause similar to that of the petition with respect to the precedence to be given to the various enumerated roads in order of construction, yet both refer to the petition expressly and designate the roads to be improved in the same form and language as therein set forth. And, further, the italicized portions of the submission order quoted above clearly show that it was the intention of the county court to adhere closely to the provisions of the petition

in all respects. If the submission order itself had designated in clear and unmistakable terms a different order for the construction of the roads, that possibly might have prevailed over a contrary provision in the petition, inasmuch as the former contains and expresses the direct proposition submitted to the voters for approval or rejection, while the primary function of the latter is to regulate and control county court action in the submission proceedings. Or if both the petition and submission order had omitted to designate the order of construction, thereby leaving open for subsequent determination an essential factor not submitted to the voters, the county court probably would have had authority of its own initiative to act and remove the uncertainty. *Brown* v. *County Court,* 78 W. Va. 644; *Chrystal* v. *County Court,* 83 W. Va. 114. See also *Harner* v. *County Court,* 80 W. Va. 626, 636. But where the petition expressly provides the order in which the various enumerated roads shall be constructed, and the submission order is silent in that respect, but refers to the petition and indicates a purpose to follow closely its provisions, courts, in order to remove the ambiguity, which must be solved by some one when funds are not sufficient to cover all the work proposed, must and will look to the petition to ascertain the purposes therein disclosed, and require conformity to the order of construction therein expressed, so long as there is nothing in the submission order indicating a contrary intent.

It is in this latter respect that the case before us differs from *Chrystal* v. *County Court,* cited, and *Brown* v. *County Court,* cited. In the former case neither the petition nor the submission order made reference to the order of precedence which was to govern the construction of the various roads therein enumerated, and under those circumstances this court held that, "unless otherwise limited, the county court may, when it has not sufficient fund to complete the entire road, build first such portions of it as, in its judgment, are most needed and will best accommodate the greatest number of citizens." In the latter neither the petition nor the submission order definitely described which of two roads between certain designated points should be improved, and the court held that, "in the absence of a definite identification of the road contemplated, the county court was

not deprived of the right to exercise the discretion vested in it by law to determine which of the two roads it would improve."

Here that condition does not prevail. The petition expressly provides the order of construction, and the submission order, though itself silent in that regard, discloses a purpose to follow the provisions of the petition, in the light of which the voters authorized and ratified the bond issue. In such case the county court has no discretion in the matter, but must appropriate and apply the funds placed at its disposal in the construction of the roads in the order therein designated. The rule announced in *Chrystal* v. *County Court,* cited, and *Brown* v. *County Court,* cited, does not conflict with this conclusion, but is substantially in accord with it, when considered in connection with the facts involved in the different cases.

For these reasons we approve the ruling of the court below sustaining the sufficiency of the bill, and remand the cause for such other proceedings as may be deemed necessary or as the court may be advised.

*Ruling affirmed and cause remanded.*