STATE *ex rel.* THE COUNTY COURT OF MERCER COUNTY, *A Corporation*

*v.*

IRA J. PARTLOW, *Attorney General of West Virginia*

(No. 9986)

Submitted September 23, 1947. Decided November 25, 1947.

A. J. *Lubliner, Roscoe H. Pendleton,* Prosecuting Attorney for Mercer County, and *Hartley Sanders,* for petitioner.

*Ira J. Partlow,* Attorney General, and *Eston B. Stephenson,* Assistant Attorney General, for respondent.

*George Richardson, Jr., amicus curiae.*

HAYMOND, JUDGE:

This statutory proceeding, instituted by virtue of Section 26, Article 1, Chapter 13, Code, 1931, by the County Court of Mercer County, as petitioner, against Honorable Ira J. Partlow, Attorney General of West Virginia, as respondent, involves the validity, in whole or in part, of a proposed issue of bonds by the petitioner, in the principal amount of $1,100,000.00, for the express purpose of acquiring a site and constructing upon it a public airport in Mercer County. The question of the issuance of county bonds in the aggregate principal sum of $1,100,000.00 for the purpose stated was regularly submitted to the qualified voters of Mercer County at an election held on Tuesday, August 6, 1946. The result of the election was in favor of the proposed issue by three fifths of all the votes cast for and against it as required by law. The regularity of the election is not challenged in this proceeding.

In submitting the question of the proposed issue to the voters, the county court acted upon the assumption that there were unused and available debt levies of Mercer County at the rates of three cents, six cents, twelve cents

and twelve cents on the valuation of the four several classes of taxable property within the county as shown by the assessment for state and county purposes for the fiscal year 1946-1947, which was the last assessment prior to the holding of the bond election on August 6, 1946. These levies, if available, are sufficient to satisfy the principal and the accruing interest of bonds in the authorized principal amount of $1,100,000.00. The debt to be incurred by the issue and the sale of the proposed bonds, of which there are 1,100, is to extend for a period of thirty years. Each of the bonds is of the denomination of $1,000.00. The bonds are in the form of coupon bonds and some of them are payable as to principal in each year of the thirty year period. They are to bear interest at the rate of two per cent per annum, payable semi-annually, and the annual levy requirement for the payment of principal and interest is approximately $49,000.00. After the proposal submitted to the voters had been approved at the election, however, it was ascertained, upon consultation by representatives of the county court with the State Tax Commissioner, that there were, in fact, unused and available debt levies on the several classes of property at the lesser rates of one and six tenths cents, three and two tenths cents, six and four tenths cents, and six and four tenths cents, instead of the higher levy rates assumed by the county court to be available, and that by these lesser levy rates, based on the current assessment valuations, bonds in the aggregate sum of only $600,000.00 could be financed and paid by the county court from legally leviable funds.

Upon these facts, and as required by statute, Section 34, Article 1, Chapter 13, Code, 1931, the county court, on January 9, 1947, transmitted to the Attorney General a certified copy of all records pertaining to the proposed issue. The questions submitted for his action related to the validity of the proposal to issue bonds in the aggregate principal sum of $1,100,000.00. They did not present or involve any proposal for an issue of bonds in the aggregate principal sum of $600,000.00 or in any other aggregate principal sum less than $1,100,000.00.

While the matter was pending before the Attorney General, the county court in a written communication dated July 21, 1947, informed him that, because of the financial condition of the county, it could not contribute any funds levied for the current operating expenses of the county to finance the proposed bond issue.

On July 25, 1947, the Attorney General disapproved the issue of the bonds in the amount of $1,100,000.00 authorized by the county court and transmitted to it by mail written notice of his disapproval. He also caused the publication of the notice required by statute of his action in disapproving the validity of the proposed issue. The County Court of Mercer County, as a person in interest, within the period provided by the statute for that purpose, instituted this original proceeding in this Court on August 15, 1947, by presenting its petition for reversal or modification of the action of the Attorney General.

This proceeding was submitted for decision upon the petition, the certified copy of all records pertaining to the bond issue, the written statement of the Attorney General, the oral argument and the brief of the attorneys for the petitioner, and the brief of the attorney for certain voters of Mercer County, as *amicus curiae*, filed by leave of this Court. In the oral argument and in the briefs upon submission, the available debt levy rates, as determined by the State Tax Commissioner, used by the Attorney General in considering the validity of the bonds, and the inability of the County Court to contribute, from the amount authorized to be levied for its current expenses, to the payment of the principal and the interest charges of the proposed bonds in the amount of $1,100,000.00, were not challenged or denied.

The petitioner, the County Court of Mercer County, though in effect conceding that the available rates of the unused debt levies of one and six tenths cents, three and two tenths cents, six and four tenths cents and six and four tenths cents, based upon the valuation of all the sep-. arate classes of taxable property in Mercer County, as

shown by the last assessment preceding the bond election, are insufficient and that the current operating levies are not available for application to the payment of the bonds in the amount of $1,100,000.00, contends that the bonds in the entire principal sum of $1,100,000.00 are valid, but that, if bonds to that amount may not be legally issued, they may be so issued to the aggregate of $600,000.00 for which sum unused debt levies are available. The *amicus curiae* advances the same contention and vigorously insists that bonds of the proposed issue to the amount of $600,000.00 are valid.

It is established by the undisputed facts already recited relating to the financial condition of Mercer County that, when issued, the proposed bonds in the amount of $1,100,-000.00, as to the amounts of principal and interest which become due annually, can not be paid in full during the period of thirty years by present legally available levies if the current property assessment valuations remain unchanged. The amount required in each year of the duration of the issue to pay the principal of the bonds which then become due and the then accrued interest is approximately $49,000.00, which is in excess of all available revenue that may be legally used for that purpose. A substantial portion of the entire authorized debt levies of the county is now, and for several years will be, required to pay bonded indebtedness incurred before, and existing at, the time of the adoption in 1932 of the Tax Limitation Amendment to the Constitution of this State.

Obligations of political divisions of a State may not be incurred in excess of the legally available revenue derived from taxes raised by valid levies or from other legally authorized sources. This is a sound and necessary principle of public finance. Its violation would permit the issuance of worthless or depreciated public securities, issued for default rather than for payment because of the known lack of available public funds, cause loss to the purchasers of such obligations, and destroy the financial credit of the political division involved. It would create an intolerable financial condition.

It may be stated generally that bonds of a political division in excess of its debt limitations are void. 43 Am. Jur., Public Securities and Obligations, Section 24. A constitutional or statutory limitation may provide that no larger amount of bonds may be issued than a certain rate of taxation will liquidate within a designated period. 15 C. J. 614; 20 C. J. S., Counties, Section 259. Restrictions upon the creation of indebtedness by political divisions of this State in excess of fixed limits are imposed by legislative and constitutional provisions.

Before the ratification of the tax limitation amendment in November, 1932, Article X, Section 1, Constitution of West Virginia, the restrictions upon the amount of indebtedness of political divisions of this State were those imposed by Article X, Section 8, of the Constitution and by Section 3, Article 1, Chapter 13, Code, 1931. Article X, Section 8, of the Constitution restricts the indebtedness of political divisions to five per cent on the value of the taxable property within them, to be ascertained by the last assessment for state and county taxes previous to the creation of the indebtedness. Section 3, Article 1, Chapter 13, Code, 1931, limits the amount of the bonded indebtedness of any political division to two and one-half per cent of the value of the taxable property within it, as shown by the last assessment for state and county purposes next prior to the issuing of its bonds; but it permits certain specified governmental units to become indebted and to issue bonds for designated purposes in an additional sum not to exceed two and one-half per cent of the value of the taxable property within them as shown by the assessment mentioned in the statute. The statute just referred to and a similar earlier statute have been held to be constitutional and the right of the Legislature to regulate the issuance of bonds of political divisions within the limitation imposed by Article X, Section 8, of the Constitution, has been upheld by decisions of this Court. *Sanders* v. *County Court of Raleigh County,* 115 W. Va. 187, 174 S. E. 878; *Pfalzgraf* v. *County Court,* 73 W. Va. 723, 81 S. E. 397. Amendments not pertinent to the ques-

tions here involved have been made to Section 3, Article 1, Chapter 13, Code, 1931; but that statute, as amended, was, in 1946, and still is, in force and effect.

The Tax Limitation Amendment, Article X, Section 1, and the legislation enacted pursuant to it, operate to impose an additional limitation upon the amount of the indebtedness which may be incurred by political divisions. The Legislature, to accomplish the purpose of the amendment to the Constitution, by statutes enacted at different sessions since its ratification in 1932, grouped all taxable property into four distinct classes and limited the taxes to be assessed by all levying units to a specified maximum rate upon that in each class in obedience to the constitutional mandate. The statute now in effect which regulates that subject was enacted in 1939. Chapter 132, Acts of the Legislature, 1939, Regular Session. A provision of Article X, Section 1, of the Constitution, which authorizes the Legislature, upon stated conditions, to provide for increasing the maximum rates authorized to be fixed by the different levying bodies not to exceed fifty per cent of the fixed rates for a period of not longer than three years at any one time, and the legislation enacted in conformity to that constitutional provision, Section 16, Article 8, Chapter 67, Acts of the Legislature, 1933, Second Extradordinary Session, are not involved in this proceeding.

Section 6b, Article 8, Chapter 132, Acts of the Legislature, 1939, Regular Session, which limits the authority of a county court to lay levies for taxation of property within the county, is couched in this language:

"County courts are hereby authorized to lay not in excess of the following maximum levies, for the purposes specified and in the following order:

"(1) With respect to the county as a whole for the payment of (a) interest and sinking fund requirements for bonded indebtedness incurred prior to the adoption of the tax limitation amendment; and (to the extent not so required), (b)

other legally incurred contractual indebtedness, not bonded, if any, incurred prior to the adoption of the tax limitation amendment, of the county as follows: On class I property, seventy-five one-hundredths of one cent; on class II property, one and one-half cents; and on classes III and IV property, three cents.

"(2) With respect to a magisterial or special taxing district for which the county court is required to lay the levy, for the payment of (a) interest and sinking fund requirements for bonded indebtedness, incurred prior to the adoption of the tax limitation amendment; and (to the extent not so required), (b) other legally incurred contractual indebtedness not bonded, if any, incurred prior to the adoption of the tax limitation amendment, as follows: On class I property, four and fifteenth-hundredths cents; on class II property, eight and three-tenths cents; and on classes III and IV property, sixteen and six-tenths cents;

"(3) For general county current expense as follows: On class I property, nine and four-tenths cents; on class II property, eighteen and eight-tenths cents; and on classes III and IV property, thirty-seven and six-tenths cents. But in a county where the total assessed valuation of all classes of property is less than six million dollars, the county court may, with the prior written approval of the tax commissioner, exceed the rates of levy for general current expense by not more than twenty-five per cent of the rates specified."

Another statute, Section 20, Article 8, Chapter 67, Acts of the Legislature, 1933, Second Extraordinary Session, contains, in part, these provisions:

"When the levies apportioned to, or in any way becoming available to any tax levying body for debt purposes alone, shall be insufficient to meet the requirements for such indebtedness, then if there remain any part of the amount authorized to be levied and apportioned to such taxing body for current expense purposes and not required for such current expense purposes, such remain-

ing part shall be laid by such fiscal body in addition to its laying of the levies hereby expressly apportioned to it for said debt purposes and applied to the payment of its said contractual indebtedness existing at the time of the adoption of the 'tax limitation amendment'."

Section 7, Article 8, Chapter 125, Acts of the Legislature, 1941, Regular Session, relating to levies for indebtedness and general current expenses of taxing units, employs this language:

"If the allocation made to a taxing unit for the purposes of debt incurred prior to the adoption of the tax limitation amendment is not required, in whole or in part, for the purposes of such debt, the governing body may, with the prior written approval of the tax commissioner, increase the rates allocated for general current expenses by the amount not required for debt purposes."

The total valuation of the four separate classes of taxable property in Mercer County, as shown by the assessment for state and county purposes for the fiscal year 1946-1947, was $59,404,410.00 and the bonded indebtedness of the county incurred before the adoption of the Tax Limitation Amendment amounted to $314,000.00 on July 1, 1946. The total valuation of the taxable property in the county, as shown by the assessment for the fiscal year 1947-1948 was $66,382,450.00. Based upon the assessment for the fiscal year 1946-1947, the available levies on the four several classes of property are at the respective rates of one and six tenths cents, three and two tenths cents, six and four tenths cents and six and four tenths cents, and are sufficient to provide for the payment of the principal and the interest which become due in each year of a thirty year bond issue in the approximate aggregate amount of only $600,000.00. On the basis of the assessment for the fiscal year 1947-1948, the available levies on the four separate classes of property are at the respective rates of one and seven tenths cents, three and four tenths cents, six and eight tenths cents and six and eight tenths cents and are sufficient to provide for the same annual requirements

of an issue of bonds in the approximate aggregate amount of only $725,000.00. Whether the valuation of the taxable property within Mercer County as shown by the assessment for the fiscal year 1946-1947, which, as the last assessment prior to the bond election of August 6, 1946, Section 4, Article 1, Chapter 13, Code, 1931, requires the order directing the holding of the election to state, or the assessment valuation for the fiscal year 1947-1948, which, if the bonds were presently issued, would be the last assessment next prior to their issuance as provided by Section 3, Article 1, Chapter 13, Code, 1931, is the proper basis of valuation for the principal issue of these bonds, is not material to the decision of the questions presented and need not be determined. On either basis the funds available from the maximum rates of unused levies are not adequate to meet the annual payments of principal and interest of the proposed bonds in the aggregate of $1,100,-000.00.

It is obvious that the Legislature, in giving effect to the Tax Limitation Amendment to the Constitution, intended, by the enactment of Section 6b, Article 8, Chapter 132, Acts of the Legislature, 1939, Regular Session, to prohibit the creation, by a county, of any bonded indebtedness in excess of the amount which, as to principal and interest, due annually, during the period of its existence, could not be paid from funds made available for that purpose by the maximum rates of the annual levies on the several classes of property. Any other application of the statute would defeat its manifest purpose, circumvent the restrictive provisions of Article X, Section 1, of the Constitution, and permit the creation of an indebtedness which, to the knowledge of its creator at the time it came into existence, could never be paid in full during the period covered by the issue by the funds of the county which incurred it. It can not be supposed that the Legislature intended to permit any county or other political division to contract a debt which, from its inception, and during the prescribed period of its duration, could not be fully paid. It is of no consequence that the qualified

voters of Mercer County, by three fifths of all the votes cast for and against the proposal, approved the issue of the bonds. The financial inability of the county, now and at the time of the election, to pay the bonds, as to principal and interest, as they become due, rendered the voters of that governmental unit powerless to authorize the issuance of the proposed bonds as its valid and binding obligations. Neither they nor the county court could legalize or validate a transaction which the law condemns. Recognition and application of the pertinent provisions of the statute, Section 6b, Article 8, Chapter 132, Acts of the Legislature, 1939, Regular Session, lead inescapably to the conclusion that the proposed bond issue. in the aggregate principal sum of $1,100,000.00 is void and unenforceable. See *State ex rel. Boone National Bank of Madison* v. *Manns,* 126 W. Va. 643, 29 S. E. 2d 621; *Hedges* v. *County of Dixon,* 150 U. S. 182, 37 L. ed. 1044, 14 S. Ct. 71; *Dixon County* v. *Field,* 111 U. S. 83, 28 L. ed. 360, 4 S. Ct. 315. In the case of *Sexton* v. *Lee, Attorney General,* 100 W. Va. 389, 130 S. E. 437, involving the validity of an issue of bonds by a municipal corporation, this Court said that a levy insufficient to pay the principal and the interest of the bonds did not invalidate the issue. That case was decided in 1925, before the adoption of the Tax Limitation Amendment, imposing limits upon the assessment of taxes, and the enactment of the legislation which followed it. The limitation imposed by Article X, Section 7, of the Constitution did not forbid the levy increase then required to pay the bonds in question, and at the time of that decision there was no constitutional or statutory limitation which operated to prevent an increase in the rate of the levy to the point necessary to provide for their payment. The present restrictions with respect to levies did not then exist, and by reason of their subsequent adoption and enactment the pronouncement in the *Sexton* case is not applicable in this proceeding.

The question whether bonds of the proposed issue to the principal amount of $600,000.00 may be legally issued requires consideration.

Without doubt the voters who cast three fifths of all the votes in favor of the bonds at the election of August 6, 1946, had in mind and voted for an issue of bonds in the amount of $1,100,000.00, the proceeds of which were to be used to purchase a site and to construct upon it an airport which, in the proper and economical expenditure of the funds to be derived from the sale of the bonds, would cost and be reasonably worth the sum of at least $1,100,000.00. That the county court, in submitting the proposal to the voters, entertained the same view, can not be questioned. It was expected that additional moneys necessary to complete the project would be provided by the United States Government and it is manifest that the minimum financial requirement for the project' was $1,100,000.00. Any smaller sum was not considered.

The order of the county court of March 11, 1946, submitting the proposal to the voters, contains statements that the amount of the proposed bond issue should be $1,100,000.00, that bonds in the amount of $1,100,000.00 could be issued without exceeding any constitutional or statutory limitations, that the question should be submitted to the voters whether the county court should issue bonds in the amount of $1,100,000.00, and that the court found that the bonding of the county for $1,100,000.00 was within constitutional limits and ordered that the bonds be in the sum of $1,100,000.00. The necessary payments of principal and interest for each year of the thirty year period for which the issue was to exist were itemized and set forth in detail in the order on the basis of the principal sum of $1,100,000.00 and the issue is designated as a bond issue of $1,100,000.00 to be retired in thirty years. It is true that the form of the ballot, stated in the order and used at the election, mentions bonds to the amount of $1,100,000.00, but that phraseology is the equivalent of, and has the same meaning as, bonds in that amount. See *Knight* v. *Town of West Union*, 45 W. Va. 194, 32 S. E. 163, in which this Court said that the authorization in an ordinance of bonds not to exceed six thousand dollars is

equivalent, in legal effect, to a statement that the amount of the bonds is that sum.

The manifest purpose of those who voted in favor of the proposed issue was to obtain an airport of a definite type suitable for the needs stated in detail in the order of the county court. The project which they favored was single and indivisible. It is hardly necessary to state that an airport of the reasonable value of $1,100,000.00, built by careful, proper and economical expenditure of funds reasonably necessary to acquire it, is entirely distinct from an airport worth and to cost a sum of money slightly in excess of one-half of that amount. If the people of Mercer County receive a $600,000 airport instead of a $1,100,000.00 airport, they will not obtain the specific thing the voters who favored the proposal wanted and tried to get. Their wishes in that respect can not be satisfied by giving them something other than that for which they voted. It can not be said that those who voted for an airport to cost $1,-100,000.00 would have voted for an airport to cost the much smaller sum of $600,000.00. Those who favored the proposed bond issue voted, not for a $600,000.00 airport, but for a $1,100,000.00 airport. It can not be seriously or even plausibly urged that two such widely different amounts of money, when properly, intelligently and economically expended, will purchase the same product, whatever may be its description or its character, whether it be an airport, an apartment building, a court house, a coal mine, a school building, a hospital, or even a city block. The issue, the sale, and the use of the proceeds of bonds to the amount of $600,000.00, for the building of a $600,000.00 airport instead of an airport to be constructed for $1,100,000.00 by the proper expenditure of that amount, may be enjoined by taxpayers in a suit instituted for that purpose. See *Haws* v. *County Court,* 86 W. Va. 650, 104 S. E. 119; *Harner* v. *County Court,* 80 W. Va. 626, 92 S. E. 781; *Lawson* v. *County Court,* 80 W. Va. 612, 92 S. E. 786; *Neale* v. *County Court,* 43 W. Va. 90, 27 S. E. 370.

Consideration has been given to the general rule with

respect to the overissue of public securities, as stated in recognized legal texts and treatises. That rule is that an overissue of bonds by a political division, of which a portion of the bonds, but not all of them, is in excess of the authorized amount or the debt limit, does not affect the validity of the entire issue but of those only in excess of the amount authorized by law. 43 Am. Jur., Public Securities and Obligations, Section 25. The rule has been applied in situations in which bonds have been issued and disposed of and in which a proposed issue has not been completed. In the different jurisdictions which recognize the rule, or modifications of it, the decisions produce variant results. In some instances when bonds issued by political divisions exceed the amount authorized, those first issued and delivered are valid, and those beyond the amount authorized and issued later are not valid. See *Daviess County v. Dickinson,* 117 U. S. 657, 29 L. ed. 1026, 6 S. Ct. 897; *Shover v. Buford,* 71 Colo. 562, 208 P. 470. In other instances, when the issue exceeds the debt limit, each bond must bear its proportion of loss. 43 Am. Jur., Public Securities and Obligations, Section 25. As no bonds of the proposed issue have yet been issued, and only the authorization of the county court and the approval by the requisite number of votes have thus far occurred, and because the amount for which the bonds could have been legally issued is not sufficient to accomplish the declared purpose, it is unnecessary to consider the applicability of the foregoing rule which, in most of the cases which have been examined, has been invoked after an overissue of bonds has been negotiated.

The uncertainty and the loss which inevitably result from recognition of the validity of bonds equal to the legally authorized amount and from denial of validity to those which exceed it, with respect to a bond issue in an amount in excess of that permitted by law, justify the view that none of such bonds should be held to be valid, especially when, as in this case, none of them has been issued or negotiated.

If the voters of Mercer County want a $600,000.00 airport, instead of an airport requiring the expenditure of $1,100,000.00 which the present financial condition of that county now denies them, they possess the means to obtain it. The present available unused debt levies are sufficient to pay the principal and the interest of an issue of bonds for $600,000.00. The voters have it in their power to acquire a $600,000.00 airport by approving, upon its submission to them, a proposal to issue bonds in that amount, at an election which may be held for the purpose of deciding that question in the manner provided by law.

The action of the Attorney General in disapproving the proposed issue of the bonds of Mercer County in the aggregate principal sum of $1,100,000.00 is affirmed.

*Affirmed.*