JAMES R. JARRELL, *etc.*, AND
TAXPAYERS OF RALEIGH COUNTY

*v.*

BOARD OF EDUCATION OF THE
COUNTY OF RALEIGH, *A Corporation*

(CC 740)

Submitted September 1, 1948. Decided November 16, 1948.

*Fletcher W. Mann,* for plaintiff.

*Ira J. Partlow,* Attorney General, and *W. C. Marland,* Assistant Attorney General, for defendant.

HAYMOND, JUDGE:

This is a proceeding instituted in the Circuit Court by James R. Jarrell, a citizen and a taxpayer of Raleigh County, who sues in behalf of himself and other citizens and taxpayers, against the Board of Education of that county in which the plaintiff seeks a declaratory judgment to prohibit the defendant from expending $866,910.14 of moneys derived from special levies voted in 1941 and 1944 for purposes alleged to be unauthorized in a pleading designated as a declaration but which may properly be considered as a pleading in equity. To the answer of the defendant the plaintiff filed a demurrer which the circuit court overruled and upon the joint motion of the parties certified its ruling to this Court.

From the pleading and the exhibits filed by the plaintiff it appears that special elections for additional school levies were held in Raleigh County in 1941 and in 1944, at which such levies were duly authorized by more than sixty per cent of the votes cast for the purpose of constructing public school buildings in that county. The orders for these elections specified the purpose and the projects for which the moneys should be spent and stated the amount to be used for each project.

In the order for the special election in 1941 the following twenty separate projects and the cost of each were specified, the priority in building to be based upon the greatest need as determined by the Board of Education: Beckley Junior High School, $80,000.00; Byrd Prillerman High School, $12,000.00; Clear Fork High School, $18,-000.00; Crab Orchard School, $10,000.00; Cranberry and Skelton School, $45,000.00; Edwight School, $10,000.00; Eccles School, $8,000.00; Fireco School, $18,000.00; Hollywood School, $18,000.00; Mt. View Junior High School, $16,703.00; Marsh Fork High School, $40,000.00; Prince-

wick School, $10,000.00; Sophia High School, $65,000.00; Sprague School, $18,000.00; Shady Spring Elementary School, $23,000.00; Shady Spring High School, $27,000.00; Stoco High School, $30,000.00; Stratton High School, $35,000.00; Trap Hill Elementary School, $27,500.00; and Woodrow Wilson High School, $60,000.00, amounting to a total of $571,203.00.

In the order for the special election in 1944, these twenty six separate projects and the cost of each were also specified, the priority·in building likewise to be based upon the greatest need as determined by the board; Amigo School, $6,000.00; Byrd Prillerman High School, $2,000.00; Beckley Junior High School, $45,000.00; Clear Creek School, $25,000.00; Clear Fork High School, $4,000.00; Crab Orchard School, $36,000.00; Cranberry and Skelton School, $12,000.00; Collins High School at Coal City, $80,000.00; Elliott High School, $60,000.00; Edwight School, $2,000.00; Fireco School, $10,000.00; Helen School, $2,000.00; Mabscott School, $36,000.00; Morton Reaves School, $12,000.00; Mt. View Junior High School, $7,000.00; Old Eccles School, $20,000.00; Princewick School, $4,000.00; Pettus School, $12,000.00; Sprague School, $6,000.00;· Shady Spring Elementary School, $7,000.00; Stratton High School, $30,000.00; Stoco High School, $5,000.00; Sophia Elementary School, $25,000.00; Sophia High School, $45,000.00; Trap Hill Elementary School, $8,000.00; and Trap Hill High School, $25,000.00, amounting to a total of $526,000.00.

The election orders created committees of designated persons to advise the board in all matters relative to price, award of contracts for work and materials, inspection of work, and audit and settlement of accounts in connection with the building program.

Of the total funds authorized and raised by the two special levies an unexpended amount of $866,910.14 remained in the custody and the control of the Board of Education at the time of the institution of this proceeding on January 3, 1948.

By an order entered by the Board of Education at a

meeting held by it with advisory committee members on December 16, 1947, the available and unexpended sum of $866,910.14 of the moneys raised by the levies was allocated, with fixed amounts for costs, to these sixteen projects: Elliott High School, $92,507.98; Sprague Negro Elementary School, $36,049.24; Coal City High School, $126,386.43; Crab Orchard Elementary School, $78,000.00; Sophia Elementary School, $52,000.00; Mt. View Elementary School, $104,000.00; Clear Creek Elementary School, $43,135.31; Stratton High School, $65,000.00; Fireco Elementary School, $16,000.00; Hollywood School, $26,000.00; East Beckley Negro School, substitute for Morton-Reaves School, $26,000.00; Clear Fork High School, $39,000.00; Skelton-Cranberry School, $78,000.00; Eccles School, $52,000.00; Mabscott School, $17,831.18; and Shady Spring Elementary School, $15,000.00. It should be noted that two of these sixteen projects, Mt. View Elementary School and East Beckley Negro School, for which were allocated the respective sums of $104,000.00 and $26,000.00, were not mentioned or designated in either of the orders for the elections in 1941 and 1944 which submitted to the voters the question of authorizing the special levies. These projects may therefore be characterized as new or additional projects which have been substituted and selected for completion by the board.

No part of the funds raised by either special levy has been expended for the construction of Trap Hill Elementary School for which $27,500.00 was specified in the order for the election in 1941 and $8,000.00 was specified in the order for the election in 1944, or Trap Hill School for which $25,000.00 was specified in the order for the election in 1944. The plaintiff and other voters in the magisterial district in which the Trap Hill schools were to be located were induced to vote for the levies because of the inclusion of these schools and they would not have voted in favor of the levies if no provision had been made for these projects at the designated cost for each of them. If the unexpended sum of $866,910.14 of the moneys obtained from the levies is spent in the manner provided by the allocation made by the board on December 16, 1947, these

schools will· not be built or paid for by money realized from either of the special levies.

The plaintiff charges that the expenditure of the remaining portion of the funds in the manner and for the projects provided by the allocation is unauthorized and prays for a declaratory judgment to prohibit .that use of the money.

The answer of the defendant admits the material facts as alleged by the plaintiff but it defends against his charge of unauthorized expenditure of the funds on the ground that an unexpected and extraordinary increase, since the special elections, in the cost of labor and materials which, as to the only designated project for which bids were received, was seventy one per cent above the amount provided for it by the special levies, renders impossible the completion of the designated projects as planned by the use of the unexpended funds and other legally available funds at the disposal of the board. The answer also states that of the funds realized from the levies authorized by the voters for the completion of the projects specified in the election orders the sum of $294,-202.08 was expended prior to July 1, 1947, in the completion of six of the designated projects; that of the remaining unfinished designated projects only the sixteen projects embraced in the allocation of December 16, 1947, can be completed by the use of the unexpended sum of $866,-910.14; and that no additional funds from any legally available source are now or will be obtainable before July 1, 1949, for the completion of the projects as originally planned. The defendant avers that by reason of this unfavorable financial situation its only alternatives are: (1) To do nothing with the unexpended sum of $866,910.14 until relief in some manner is afforded in the future; (2) to use that sum in partially constructing all the designated projects without being able to complete any of them; or (3) to expend the funds in the completion of the sixteen projects which it deems the most urgent, as it has undertaken to do by its order of December 16, 1947. The defendant further asserts that as the

election orders stated the purpose for which the funds realized from the special levies should be used was constructing and improving school and other buildings and securing lands necessary to the Raleigh County school system, the board has the discretion to allocate the unexpended funds for the completion of the sixteen projects which it considers most urgent, even though all the projects as originally planned and the cost of each were specified in the election orders.

The question presented by the certificate is whether the answer of the defendant, which in overruling the demurrer of the plaintiff the circuit court considered legally sufficient, states a complete defense to the claim of the plaintiff that the action of the Board of Education is unauthorized in allocating the unexpended fund to the completion of only fourteen of the entire number of unfinished projects designated in the orders which submitted the question to the voters and the two new additional projects which were not designated in those orders.

No decision in this jurisdiction has been cited or has come to the attention of this Court involving the use of funds raised by special levy authorized by the voters of a political subdivision for some specified projects and other new projects to the exclusion of the other specified projects when all the designated projects and the particular cost of each have been specifically set forth in the order for the special election at which the levy was authorized. Several prior decisions of this Court, however, deal with the power and the authority of a political subdivision to use the proceeds derived from bonds authorized at an election at which submission to voters of the question of issuing the bonds is required. In each of those cases the question involved was similar in principle to that presented in this case; and in those decisions the principles which affect and govern the use and the expenditure of funds authorized by voters at elections were enunciated and applied. See *Haws* v. *The County Court of Wayne County,* 86 W. Va. 650, 104 S. E. 119; *Harner* v. *Monongalia County Court,* 80 W. Va. 626, 92 S. E. 781; *Lawson* v. *County Court*

*of Kanawha County,* 80 W. Va. 612, 92 S. E. 786; *Brown v. County Court of Preston County,* 78 W. Va. 644, 90 S. E. 166.

The law recognizes the difference in the character of the rights of taxpayers in connection with the authorization and the control of funds raised by levies which can be created only by their consent and of their rights with respect to the creation and the expenditure of levies imposed by a political subdivision in a lawful manner for ordinary and legitimate purposes. In discussing this subject with reference to the power of a county court to raise and expend funds for the construction or the improvement of a public road, the opinion of this Court in the case of *Harner* v. *Monongalia County Court,* 80 W. Va. 626, 92 S. E. 781, uses this language: "There is no power or authority in the county court or any other tribunal to apply a fund to a purpose other than that for which it was ordained and created by a vote of the people. As to the application of such a fund the will of the electors is supreme. Without their consent no debt can be imposed upon them, no liability assumed and no money raised or appropriated by the county tax levying bodies beyond the limitation prescribed by law. With the levies when made in a lawful manner, for ordinary and legitimate purposes, the taxpayer can not interfere. But when he has consented to be taxed beyond that limit, and empowered his public agent to collect and expend a fund for the accomplishment of an object not within the power of such agency without his express authorization, the fund, when raised, can not be appropriated and expended otherwise than as ordained by him; and to prevent its misappropriation or diversion equity will grant relief by injunction." See also *Lawson* v. *County Court of Kanawha County,* 80 W. Va. 612, 92 S. E. 786, Syl. 2.

In the *Harner* case an issue of bonds was authorized by the voters of the county for the purpose, among others specified in the order for the election, of improving a section of road on a designated location between Pool's Rocks and its intersection with Sabraton Road in Monon-

galia County. Subsequently the county court avowed its intention, and entered into a contract, to use a portion of the fund derived from the sale of the bonds for the improvement of a substituted route located at a distance of approximately seven hundred and fifty feet from the existing road and to intersect Sabraton Road at a point different from that of the old intersection. This Court held the attempted change in location unauthorized and enjoined the proposed expenditure of money for that purpose as an unlawful diversion of the fund.

In *Lawson* v. *County Court of Kanawha County*, 80 W. Va. 612, 92 S. E. 786, this Court said in Point 4 of the syllabus: "A provision in an order of a county court submitting to the voters of a magisterial district, a bond issue proposition for a public road improvement, appointing an advisory committee and requiring the engineers in charge of the work, the plans and specifications and the contracts for construction of the work, to be such as are approved by such advisory committee and the State Road Engineer, is valid and binding upon the county court, and taxpayers of such district may enjoin the performance and carrying out of a contract for the work, entered into by the county court without the approval of such committee and over its protest."

Under an issue of bonds for the construction of a road with concrete specified in the order of submission, a county court can not use the proceeds of the bonds to construct the road of a different material even on the designated location. *Brown* v. *County Court of Preston County*, 78 W. Va. 644, 90 S. E. 166.

In *Haws* v. *The County Court of Wayne County*, 86 W. Va. 650, 104 S. E. 119, Point 1 of the syllabus is in these words: "The voters of a county, in the issuance of bonds for the purpose of raising funds for the construction or improvement of public roads, may place upon the expenditure of such funds any limitations or restrictions not forbidden by the fundamental law, and those charged with the expenditure of such funds will be enjoined from diverting the same to any other purpose than that to

which they are directed to be applied by the terms of the grant."

The time, the terms and the conditions of the issuance of municipal aid bonds depend entirely upon the consent of the legal voters and can not be changed or departed from without their consent ascertained in the manner provided by law. *Ravenswood, S. & G. R'y Co.* v. *Town of Ravenswood,* 41 W. Va. 732, 24 S. E. 597, 56 Am. St. 906; *Neale* v. *County Court of Wood County,* 43 W. Va. 90, 27 S. E. 370. When an ordinance submitting to the vote of the people a proposed bond issue embraces several projects and, as required by statute, Code, 1931, 13-1-6, specifies the amounts for each of the projects, a substantial variance between the amounts stated in the ordinance and those set forth in the ballot will render the issue invalid. *State ex rel. Davenport* v. *Meadows,* 120 W. Va. 602, 199 S. E. 883.

The statute which authorizes a local levying body to provide for an election to increase levies requires the order for the election to set forth the purpose for which additional funds are needed, the amount for each purpose, the total amount, the separate and aggregate assessed valuation of each class of taxable property within its jurisdiction, the proposed additional rate of levy in cents on each class of property, and the proposed number of years, not to exceed three, to which the additional levy shall apply. Section 16, Article 8, Chapter 67, Acts of the Legislature, 1933, Second Extraordinary Session. In obedience to the mandate of this statute the orders for the elections in 1941 and 1944 stated the purpose for which the special levies should be raised and specifically set forth the amount to be used for each of the particular projects. It did not reserve the right to the board to change any project by elimination or substitution in any instance.

Section 25, Article 8, Chapter 67, Acts of the Legislature, 1933, Second Extraordinary Session, which amended and reenacted Section 12, Article 8, Chapter 11, Code, 1931, provides that boards or officers expending funds derived from the levying of taxes shall expend the funds

only for the purpose for which they were raised. In considering and applying the provisions of the prior statute, Code, 1931, 11-8-12, which were substantially the same as those of the present statute, this Court held that funds derived from taxes levied for a particular purpose must be expended for that and no other purpose. *State ex rel. Cook* v. *Lawson,* 110 W. Va. 258, 157 S. E. 589.

It is clear that the action of the Board of Education in allocating all of the unexpended amount of $866,910.14 derived from the two special levies to only fourteen of the entire number of incompleted projects specifically provided for in the orders for the special elections, and the two new projects not mentioned in such orders, if permitted, will entirely eliminate all the other unfinished specified projects, including the Trap Hill schools, and prevent their construction as originally planned and submitted to the voters who approved and authorized the levies for the purpose of constructing not some, but all, of the particularly designated projects embraced in the program of the board. That action, if carried into effect, would constitute a diversion of the fund which the law forbids, and can not be given judicial approval. That the board is faced with a difficult problem, due to a condition created by causes beyond its control, is of course unfortunate, but that regrettable situation can not justify the expenditure of the fund in a manner which the law does not authorize or permit. Though the fund is insufficient to complete each designated project in the manner originally planned, it is adequate, and may be used, to construct each of them on a smaller scale and on a basis which will utilize the amount specified for each project. If this course be not pursued the fund must be preserved until the financial condition of the county improves to the extent necessary to enable the board to complete, in a lawful manner, the projects as originally planned and as authorized by the voters.

It may be urged that under the decisions of this Court in the cases of *Chrystal* v. *Preston County Court,* 83 W. Va. 114, 97 S. E. 606, and *Goodman* v. *County Court of Fayette County,* 86 W. Va. 669, 104 S. E. 264, the provision

in the orders of submission that the priority in building the projects should be based upon the greatest need, as determined by the board, authorizes it to select and determine certain projects as most needed and, if the fund is insufficient for the completion of others, use it to complete those selected to the exclusion of the others. That conclusion, however, is not justified. In the *Chrystal* case bonds for the construction of public roads in Preston County were authorized by the voters at an election held for that purpose. In the order of submission one of the roads to be improved was designated as "A fifteen foot concrete road beginning at the Maryland line, just west of Hutton, Maryland, and extending to and through the town of Terra Alta; thence to and through the Town of Albright to the Pleasant District line". It does not appear that definite amounts were specified for use in the construction of the roads. The fund realized was not sufficient to complete the entire road, and the county court, which was not restricted by the terms of the order, built only such portions of it as, in its judgment, were most needed and would best accommodate the greatest number of citizens. This Court sustained that action of the county court and held that the language of the order of submission did not prescribe the manner or the order of beginning and carrying on the improvement, but was merely descriptive of the road to be improved, and that the county court, not being limited as to the manner or the order in which the road should be improved, could, when the fund was not sufficient to complete the entire road, build such portions of it as, in its judgment, were most needed and would best accommodate the greatest number of citizens.

The contents of the submission orders in this case distinguish it from the *Chrystal* case and render that holding inapplicable. In that case parts of the designated road were built. Here no part of many of the specified projects will be built, but instead only some of them and some new projects will be completed, by the board by its proposed use of the fund. The submission orders here under consideration, unlike the submission order considered in

the *Chrystal* case, specify the amounts for each project as required by the present statute, the substance of which, as it appears in Section 12, Article 8, Chapter 11, Code, 1931, was first enacted in 1919 after the decision of the *Chrystal* case in 1918.

In the *Goodman* case the petition for a bond issue to provide funds for the construction and the improvement of certain roads expressly designated the order in which the roads were to be constructed. The order of submission was silent on that point but referred to the petition and indicated a purpose to follow its provisions. The funds were insufficient to cover all the work proposed to be done. The county court deviated from the order of constructing the roads as provided in the petition and directed that the construction work should begin upon a road not described in the petition or the order of submission. In that situation this Court held that the county court was required to conform to the order of construction provided in the petition, as nothing in the order of submission indicated a contrary intention, and affirmed the ruling of the trial court which sustained the sufficiency of a bill of complaint for an injunction against the county court. The decision in the *Goodman* case furnishes no basis for the action of the Board of Education in attempting to use the fund at its disposal for the construction of the sixteen projects selected by it to the exclusion of all the other unfinished projects specified in the orders of submission under consideration in this case.

The effect which must be given to the particular provisions of the submission orders in this case, in their entirety, including the terms relating to priority in building based upon the greatest need as determined by the board and the specification of definite amounts for each of the designated projects, is that the board may determine which of those projects should be first commenced and completed, within the limit of the amount specified for each of them, provided the others should also be completed, by the use of the available fund, but not that any, or only some, of the specified projects and additional projects not mentioned in the orders of submission, should

be completed to the exclusion of any or all of the other designated projects if the fund should be insufficient to complete all of them.

The defendant cites and relies upon the case of *County Court of Roane County* v. *Phillips*, 121 W. Va. 438, 4 S. E. 2d 425, to support its action in allocating the fund and in attempting to use it to complete only fourteen of the unfinished specified projects and two new projects. The facts of that case distinguish it from the case at bar and render it inapplicable in this proceeding.

For the reasons stated the circuit court should have sustained the demurrer of the plaintiff to the answer of the defendant and its action in overruling the demurrer is reversed.

*Ruling reversed.*