364 S.E.2d 540

Junior Joseph BANE, George Chesney, Clarice Christopher, Ida DeBardi, Jack Dumire, Donna Frum, Ralph Frum, Junior Frymyer, Carolyn Hamilton, William Hawkins, Herman Hazelwood, Elwood Kennedy, Judith Kline, Irene Liberatore, Robert Logan, Maxwell Marsh, Richard Mayfield, Judith Mayfield, Charlene McMillen, Shirley Pitcher, George Poole, John Poole, Beverly Sell, Charles C. Sell, Darrell Shay, Joseph Shultz, Daniel Strader, Janis Thorn, Learnie Walls, Darryl White, Freda (Cathy) White, Robert B. White, Charlotte Williams, Betty Lue Wolfe and John Zinn,

v.

The BOARD OF EDUCATION OF the COUNTY OF MONONGALIA, A Statutory West Virginia Corporation.

No. 17635.

Supreme Court of Appeals of West Virginia.

Dec. 18, 1987.

---

David L. Solomon, Morgantown, for appellees.

Herbert G. Underwood, Irene Keeley, etc. Clarksburg, for appellant.

McHUGH, Justice:

This case is before this Court upon appeal from final orders of the Circuit Court of Monongalia County, West Virginia ("the trial court"), awarding back pay and future salary supplements and awarding reasonable attorney's fees. The appellant, respondent below, is the Board of Education of Monongalia County ("the Board"). The appellees, petitioners below, are some of the current or former nonteaching personnel, that is, "service" personnel employed by the Board.[1] After reviewing the petition for appeal, the briefs of the parties and oral argument of counsel for the appellant, as well as the voluminous record, we reverse for the reasons hereinafter stated.

I

Of the thirty-five appellees, thirty have been employed by the Board as bus operators, one as a mechanic and four as "secretaries II."

Prior to July 1, 1975, *W. Va. Code*, 18A–4–8 [1973] set a minimum monthly salary for all service personnel at $335 per month, regardless of their occupation or years of employment. The Board had established a county salary schedule for service personnel which took into account job classification and years of experience.

In 1973 and 1978, for the fiscal years commencing July, 1974, and July, 1979, respectively, the voters of Monongalia County approved special levies containing the following language:

1973—"Supplement nonteachers' salaries and extend services, approximately $339,-824 annually."

1978—"Maintain nonteachers' salaries and extend services, approximately $368,-692 annually."

Other local funds, that is, regular levy funds, and not just special levy funds, together with state funds, were used to meet the requirements of the county salary schedule in 1974–75, the first fiscal year during the first of the two, five-year special levy periods involved in this case (July 1, 1974 through June 30, 1979 and July 1, 1979 through June 30, 1984).

By amendment to *W. Va. Code*, 18A–4–8, effective July 1, 1975, a state minimum monthly salary schedule was established for all service personnel based upon occupational classification and years of experience.

---

1. The appellees deliberately "opted out" of a larger class of nonteaching employees (service personnel) pursuing claims for back pay from the Board "and would not be bound by any adjudication involving that class." *Board of Education v. Starcher*, 176 W.Va. 388, 390, 343 S.E.2d 673, 675 (1986). That case also gives a history of the separate settlement between the larger class of nonteaching employees and the Board. This Court prohibited the trial court in that case from setting aside its original order approving the separate settlement. In so ruling we observed that both of the parties to that settlement, namely, the larger class of nonteaching employees and the Board, supported that settlement, and we held that the appellees involved in this case lacked standing to protest the settlement. Accordingly, this Court was *not* presented with the question of whether that separate settlement had been fairly made and was not in contravention of some law or public policy.

We do note that the appellees involved in this case protested the settlement in the other case on the ground, *inter alia*, that the settlement would, for unclear reasons, allegedly result in unlawful overpayments of supplemental compensation to most of the nonteaching employees. The appellees do not explain in this case how their receipt of back pay and future salary supplements under the trial court's final order would not, under the same unclear reasoning advanced by them in the other case, result in unlawful overpayments of supplemental compensation.

Before the passage of this amendment to *W.Va.Code,* 18A–4–8 in 1975, the Board did *not* calculate a specific supplement for *each* nonteaching employee.

The Board, following historical practice, interpreted the approved levy proposal in 1973 to lodge discretion in the Board to spend the appropriated funds *in the aggregate* to supplement service personnel salaries and extend services. Similarly, the Board, following historical practice, interpreted the approved levy proposal in 1978 to lodge discretion in the Board to spend the appropriated funds *in the aggregate* to maintain service personnel salaries and extend services.

The Board internally transfers funds to the general operating expense fund to pay all salaries of teaching and service personnel. For no reason apparent on the record, the appellant has never tracked the various sources of funds for the salary disbursements to individual teachers or individual service personnel. It is uncontroverted, however, that, for each year in question, the aggregate amount of money spent by the Board to supplement service personnel salaries and extend services exceeded the sum provided for in the approved special levy proposals.

During the period of the two special levies, the appellees received supplemental compensation from special levy funds for "extended services" or "extended employment," such as summer bus runs, summer mechanic work, extra bus runs during the school year and garage overtime. Payments for these extended services or extended employment were in addition to the basic county salary scale and were in addition to the experience supplement above the state minimum salary received by all of the appellees from special levy funds beginning in the 1977–78 fiscal year, discussed in the next paragraph.

Since the fiscal year 1977–78, the Board has included in the salary scale for service personnel a specific salary supplement based solely upon years of experience. In 1977–78, the salary supplement approved by the Board was an across-the-board supplement of $50 per year or $5 per month (the school year is ten months) for nontenured (0–2 years) employees, and $150 per year or $15 per month for tenured (3 years or more) employees. In 1979–80 and 1980–81, the Board increased the amount of supplement to $25 and $35 per month ($250, $350), respectively, for all school service personnel. In 1981–82, the Board increased the supplement to $35 and $45 per month ($350, $450), respectively, which continues as the present level of salary supplement for experience received by each of the service personnel.

The appellees brought this purported mandamus proceeding in the trial court to recover salary supplements allegedly due to each of them by virtue of the fact that they were not paid after 1974–75 in accordance with the 1974–75 county salary schedule, which was in excess of the state minimum salaries for that year.[2]

During the litigation in this matter and at the direction of the Board's attorney, a salary data sheet for each nonteaching employee was compiled. In these salary data sheets each employee's total salary was analyzed by source of funding: (1) the state minimum salary for the employee's classification; (2) wage payments attributable to the performance of "extended services" (overtime work); and (3) wage payments attributable to "extended employment" (work beyond the ten-month, 200-day school term, except that work beyond 240 days was calculated at a per diem rate and labeled a "supplement"). After the deductions from each of the service personnel's total compensation of those portions attributable to the state minimum salary, extended services and extended employment, any excess compensation was put into a separate worksheet column labeled "supplement."

The trial court granted the relief requested. The amount of salary supplement found by the trial court to be back pay due

---

**2.** The true nature of the relief sought was damages for breach of the written employment contracts. *See Maynard v. Board of Education,* 178 W.Va. 53, 58–59, 357 S.E.2d 246, 252–53 (1987).

to each of the appellees was the amount contained in the "supplement" column of the individual salary data sheets which was not reflected on those sheets after 1974–75, increased annually based upon experience and decreased for any days less than 200 worked in a year.[3]

The total amount of back pay awarded by the trial court was $284,106.98.[4]

## II

■ In *Thomas v. Board of Education*, 164 W.Va. 84, 261 S.E.2d 66 (1979), the voters of McDowell County approved a special levy proposal containing the following language:

> To continue the supplement to the salary or wages of *each* regularly employed full-time non-teaching employee *in the amount* of fifty-five dollars ($55.00) per month plus the required social security payments, being an approximate amount of $170,000 per year, or an approximate total for five years of $850,000.

(emphases added) In that case the special levy funds were used to meet the subsequently increased state minimum pay scale, rather than to supplement such minimum pay. The Court disapproved and held as follows in syllabus points 2 and 3:

> 2. Funds derived from a special levy may be expended only for the purpose

for which they are approved. W.Va. Code §§ 11–8–25, 11–8–26.

> 3. When the funds raised by a special levy election are intended to provide supplements to the state minimum salaries and wages of non-teaching school employees, such funds may be expended by the county board of education for that purpose only.

*See also Hairston v. Lipscomb*, 178 W.Va. 343, 347 n. 7, 359 S.E.2d 571, 575 n. 7 (1987); syl.pt. 8, *McGraw v. Hansbarger*, 171 W.Va. 758, 301 S.E.2d 848 (1983); syl. pt. 1, *Thomas v. Board of Education*, 167 W.Va. 911, 280 S.E.2d 816 (1981), *overruled on another point, Hansbarger v. Cook*, 177 W.Va. 152, 157 n. 5, 351 S.E.2d 65, 71 n. 5 (1986); syl., *Jarrell v. Board of Education*, 131 W.Va. 702, 50 S.E.2d 442 (1948).

Unlike the special levy in *Thomas*, the language of the special levies in the present case did *not* require the county board of education to pay a specific salary supplement in a *fixed* amount to *each* of the service personnel employed by the board. Instead, the special levies here required the special levy funds *in the aggregate* to be used as salary supplements and to extend services. The language of the special levies here delegated to the Board the discretion as to the manner in which it would allocate the salary supplements and extended services among the service per-

---

**3.** An example of the trial court's calculation of back pay from the individual salary data sheets is the calculation for Mr. Bane, a bus operator with nine years of experience in 1974–75. For that year, the county salary for a bus operator with nine years of experience was $4,720 per year. The state minimum salary was $3,350 per year. The $1,370 difference was the annual supplement.

For the next year, 1975–76, the county and state minimum salary for a bus operator with ten years of experience was $5,600 per year. Mr. Bane's total compensation for that year was $8,479.88, with the $2,879.88 difference attributed entirely to "extended services" (overtime) and none to "supplement" in the salary data sheet. Because there was no amount in the "supplement" column of the salary data sheet, the trial court, accepting the appellees' theory of recovery, found that Mr. Bane was owed back pay for an "unpaid supplement," even though Mr. Bane had received $2,879.88 of supplemental compensation in that year.

The amount of "unpaid supplement" for 1975–76 was not merely the $1,370 supplement for 1974–75, but $1,530, because the annual supplement in the 1974–75 county salary schedule for bus operators with *ten* years of experience is $1,530, and Mr. Bane had ten, not nine, years of experience in 1975–76.

Thus, the trial court's calculation of back pay was based upon annually ascending (with experience) supplements according to the 1974–75 county salary schedule.

**4.** An exhibit in the record before us indicates that the appellant will be liable under the trial court's order for an additional $788,139.50 annually in the future, due to the annually ascending nature of the supplements found to be owed. *See supra* note 3. The appellant will also be liable for about $2.5 million for the 1984–85, 1985–86 and 1986–87 school years, if the trial court's order is affirmed.

sonnel. All of the special levy funds in the present case *were* expended for the purposes for which they were authorized by the voters.

Where the voters by their approval of a special levy do not require that each employee of the county board of education is to receive a designated amount of supplemental salary, the county board of education has more flexibility in expending the special levy funds than in *Thomas.* Subject to certain statutory limitations, a county board of education has considerable discretion in administering its budget, including the allocation of its funds for salaries. *See Weary v. Board of Education,* 46 Ill. App.3d 182, 186, 4 Ill.Dec. 737, 740, 360 N.E.2d 1112, 1115 (1977).

At all relevant times herein, the statutory limitations on establishing a county salary schedule in excess of the state minimum salaries for service personnel of a county board of education were set forth in *W.Va.Code,* 18A–4–8, as amended:

> The county board of education may establish salary schedules which shall be in excess of the state minimum fixed by this article, these county schedules to be uniform throughout the county with regard to any training classification, experience, years of employment, responsibility, duties, pupil participation, pupil enrollment, size of buildings, operation of equipment or other requirements. Further, uniformity shall apply to all salaries, rates of pay, benefits, [and] increments of compensation for all persons regularly employed and performing like assignments and duties within the county.[5]

There is no allegation on the record that these uniformity provisions have been violated by the Board in this matter.

5. Over the years involved in this case there have been minor stylistic changes in this language of *W.Va.Code,* 18A–4–8. Effective July 1, 1984, this language was deleted from *W.Va.Code,* 18A–4–8 and placed in a new section, *W.Va. Code,* 18A–4–5b. The latter also now provides for maximum county salary schedules statewide for service personnel.

6. Effective July 1, 1984, similar language is now set forth in *W.Va.Code,* 18A–4–5b, rather than in *W.Va.Code,* 18A–4–8.

*W.Va.Code,* 18A–4–8, as amended, also provides that a county board of education which has established a county salary schedule for service personnel in excess of the state minimum pay scale may not thereafter reduce the aggregate amount of excess over the state minimum salaries, except when the excess is provided from special levy funds and the special levy is not renewed:

> In establishing such local salary schedules, no county ... shall reduce the amount of money that is the difference between the existing state minimum pay scale and the county's pay scale ..., except that a county's pay scale may be reduced when such pay scale is provided from excess levy funds and such excess levy is not renewed.[6]

The record in the present case establishes that the Board has maintained the aggregate amount of excess over the state minimum salaries throughout the ten-year period in question. The statute does *not* require the Board to maintain the excess for *each* of the service personnel.

In syllabus point 1 of *State ex rel. Payne v. Board of Education,* 135 W.Va. 349, 63 S.E.2d 579 (1951), the Court held: "Mandamus does not lie to control a board of education in the exercise of its discretion, in the absence of caprice, passion, partiality, fraud, arbitrary conduct, some ulterior motive, or misapprehension of law upon the part of such board." *Accord,* syl., *State ex rel. Jones v. Board of Education,* 178 W.Va. 378, 359 S.E.2d 606 (1987); syl.pt. 3, *Cox v. Board of Education,* 177 W.Va. 576, 355 S.E.2d 365 (1987); *Bailey v. Truby,* 174 W.Va. 8, 13, 321 S.E.2d 302, 307 (1984) (state board of education); syl.pt. 5, *State ex rel. Withers v. Board of Edu-*

See also syl., *Summers County Education Association v. Summers County Board of Education* (W.Va. Nov. 17, 1987) (a county board of education may reduce or discontinue county salary supplements to teachers, if forced to do so by defeat of a special levy, pursuant to *W.Va. Code,* 18A–4–5a [1984] ).

*cation,* 153 W.Va. 867, 172 S.E.2d 796 (1970).[7]

■ Similarly, "[a] court will not ordinarily interfere with the action of a public officer or tribunal clothed with discretion, in the absence of a clear showing of fraud, collusion or palpable abuse of discretion." Syl. pt. 6, *Pioneer Co. v. Hutchinson,* 159 W.Va. 276, 220 S.E.2d 894 (1975), *overruled on another point,* syl.pt. 1, *State ex rel. E.D.S. Federal Corp. v. Ginsberg,* 163 W.Va. 647, 259 S.E.2d 618 (1979). *Accord, Sticklen v. Kittle,* 168 W.Va. 147, 166, 287 S.E.2d 148, 158 (1981) (involving selection of a school site by a county board of education); *Excavation Construction, Inc. v. Ritchie,* 159 W.Va. 888, 890, 230 S.E.2d 822, 823 (1976).

■ In the present case the trial court, without a showing of fraud, collusion or palpable abuse of discretion, substituted its judgment for that of the Board on the manner in which to allocate the special levy funds among the service personnel. The trial court did so, even though acknowledging in its final order that it was convinced there was "absolutely no way to determine the mathematically correct answers to the issue," that is, it was impossible to calculate retrospectively the exact amount of special levy funds paid as salary supplements to each of the service personnel in 1974–75 (or any other school year), due to the failure of the Board to track the various sources of funds for the salaries of each of the service personnel. The trial court merely accepted the appellees' theory of recovery that the amount of allegedly unpaid salary supplements due to each of the service personnel was reflected by the "supplement" column of the salary data sheets.

It is clear, however, that the category in the salary data sheets labeled "supplement" had nothing to do with the way the Board established its salary schedule, with the way the Board maintained its accounting records or with the amount of money from the special levies. Instead, the "supplement" category was a residual category used after-the-fact to label funds not otherwise attributable to the state minimum salary, extended services or extended employment.

Moreover, even if it were possible to calculate the amount of special levy funds paid as salary supplements to each of the service personnel in 1974–75, the trial court's final order having the effect of "freezing" the compensation of each of the service personnel according to the 1974–75 county salary schedule would still be in conflict with the language of the special levy in this case and with the provisions of *W.Va.Code,* 18A-4-8, as amended. As discussed previously, neither the special levy in this case nor *W.Va.Code,* 18A-4-8, as amended, "froze" the compensation of *each* of the service personnel according to the 1974–75 county salary schedule for as long thereafter as the voters of Monongalia County renewed the special levy. Stated another way, the amount of special levy funds paid as salary supplements to *each* of the service personnel in 1974–75 is not material in this case. Only the *aggregate* amount of special levy funds expended each year is material in this case.

■ Where the voters by their approval of a special levy do not require that each employee of the county board of education is to receive a designated amount of supplemental salary, the board of education may annually exercise sound discretion in allocating the special levy funds as salary supplements among its employees. A

---

7. *See also Summers County Education Association v. Summers County Board of Education,* 179 W.Va. at 108, 109 n. 3, 365 S.E.2d at 388, 389 n. 3 (1987); syl.pt. 4, *Dillon v. Board of Education,* 177 W.Va. 145, 351 S.E.2d 58 (1986); *State ex rel. Board of Education v. Casey,* 176 W.Va. 733, 736, 349 S.E.2d 436, 439 (1986); *Sigmon v. Board of Education,* 174 W.Va. 210, 211–12, 324 S.E.2d 352, 354 (1984); *State ex rel. Hawkins v. Tyler County Board of Education,* 166 W.Va. 363, 366, 275 S.E.2d 908, 912 (1980); *cf. Allen v. State Human Rights Commission,* 174 W.Va. 139, 147, 324 S.E.2d 99, 107 (1984) (same rule and exceptions applied to the discretion of tribunals and public officials in general); syl.pt. 3, *State ex rel. Perry v. Miller,* 171 W.Va. 509, 300 S.E.2d 622 (1983) (same rule and exceptions applied to the discretion of public boards in general).

court may not interfere with such exercise of discretion, unless there is a clear showing of fraud, collusion or palpable abuse of discretion, or unless there is a clear showing of a violation of *W.Va.Code*, 18A–4–8, as amended, or its current statutory replacement, with respect to its uniformity provisions or its provisions on the nonreduction of local funds in the aggregate.[8]

Based upon all of the above, the final order of the trial court awarding back pay and future salary supplements, as well as the final order of the trial court awarding reasonable attorney's fees to the appellees, are reversed.

Reversed.

---

**8.** We need not reach the issue of laches raised by the appellant. See section IV of this Court's opinion in *Maynard v. Board of Education*, 178 W.Va. 53, 357 S.E.2d 246 (1987), for a discussion of such issue in the context of back pay claims of school service personnel.