467 S.E.2d 142

Joan BYRD, et al., Petitioners
Below, Appellees,

v.

"The BOARD OF EDUCATION OF MER-
CER COUNTY" aka School Board of
Mercer County, Respondent Below, Ap-
pellant.

No. 22962.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 12, 1995.

Decided Dec. 13, 1995.

**2**

Kimber Ratcliffe Warner, Princeton, for Appellees.

Kathryn R. Bayless, Bayless, McFadden & Cyrus, Princeton, for Mercer County Board of Education.

Howard E. Seufer, Jr., Bowles Rice McDavid Graff & Love, Parkersburg, for amici curiae.

WORKMAN, Justice:

The Mercer County Board of Education ("Board") appeals from the June 15, 1995, order of the Circuit Court of Mercer County finding a special levy approved by Mercer County voters to be invalid. Appellees, a group of Mercer County residents, challenged the levy through a writ of supersedeas for failure to delineate specific dollar amounts for each stated purpose on the levy ballot. After due consideration of this issue, we conclude that the circuit court's ruling was incorrect.

On August 23, 1994, the Board approved a levy call for continuance of the excess school levy for the period of July 1, 1995, through June 30, 2000. The ballot containing the excess levy proposal was approved by the Mercer County voters on November 8, 1994. The election results—6,711 voters in favor and 5,008 opposed—were certified on November 30, 1994, by the county commission sitting as a board of canvassers. *See* W.Va. Code § 11–8–17 (1995); *Park v. Landfried*, 135 W.Va. 361, 63 S.E.2d 586 (1951) (stating that votes cast in special election called by local board of education should be canvassed by county commission).

A copy of the board of canvassers' certificate of votes cast was forwarded by the Board to the West Virginia Department of Tax and Revenue ("Tax Department"). On March 22, 1995, the Board proposed the levy rates and recorded the details of the proposed levy rates for fiscal year 1995–96 in its minutes. Pursuant to statutory requirements, the levy rates were then published in the *Bluefield Daily Telegraph*. *See* W.Va. Code § 11–8–12 (1995). By letter dated April 5, 1995, the Tax Department notified the Board that the state tax commissioner ("Commissioner") had approved the Board's schedule of proposed levy rates for the fiscal year beginning July 1, 1995.[1] The Commissioner concluded that "any levy rates to be imposed in excess of those prescribed by the West Virginia Constitution were legally authorized by a vote of the people."

On April 18, 1995, the Board laid the levy and entered the levy order reflecting the adoption of the rates previously proposed and published in its records. As required by West Virginia Code § 11–8–13 (1995), the levy order was forwarded to the Commission-

---

1. West Virginia Code § 11–8–12a (1995) provides that: "The board [of education] shall not finally enter any levy until it has been approved in writing by the tax commissioner."

er and the Mercer County Superintendent of Schools. Absent the intervening ruling by the circuit court, the levy rates approved by the voters would have taken effect on July 1, 1995.

Approximately one week prior to the November 1994 special levy election, some of the Appellees voiced objection to the county commission and to prosecuting attorney, Charles R. Smith, regarding the form of the ballot. The specific objection concerned the fact that the levy order listed eleven separate purposes for which additional funds were needed, divided into two categories—"a." and "b."—with no corresponding dollar amounts designated for each purpose for which the funds were sought. The pertinent ballot language was as follows:

Special Election to authorize additional levies for the fiscal years beginning July 1, 1995; ... and the approximate amounts necessary for each purpose are set forth as follows, ... :

A. (1) For continuing the upgrading and improving of the instructional program of the Mercer County School District by the employment and retention of qualified teachers and substitutes thereby keeping the Mercer County School District in a competitive position with other counties in West Virginia, and

(2) For continuing the maintenance of a fair and adequate salary schedule for all service and auxiliary personnel so as to retain and employ competent staff and substitutes for maintaining adequate services for the Mercer County School District, and

(3) For continuing the provision of fringe benefits such as dental and optical insurance coverage for all employees and/or their dependents, in the annual amount of approximately .......... $2,900,000.

B. (1) For providing free textbooks in grades kindergarten through 12, inclusive, and

(2) For providing necessary instructional supplies, materials and equipment to all schools, and

(3) For continuing support of public libraries, health services for students and employees, 4–H activities, and

(4) For continuing support of extracurricular activities for students including chorus, instrumental music, clubs, athletics, cheerleading, and classroom field trips, and

(5) For maintaining and renovating existing school facilities, school building construction and,

(6) For assisting in meeting fire marshal requirements, and

(7) For assisting in meeting utility and operational costs, including insurance, in all buildings and

(8) For assisting in meeting the cost of transporting students to and from school, in the annual amount of approximately $3,251,320.

That the annual total approximate amount necessary to carry out the above purposes, after making due allowances for exonerations and delinquencies, is approximately $6,151,320.

That the total approximate amount necessary to carry out the above purposes, during the term of the five (5) year levy, after making due allowances for exonerations and delinquencies, is approximately $30,756,600.

The prosecuting attorney communicated to the county commission his opinion that the form of the ballot conformed with the statutory requirements for an excess school levy. Based on the opinion rendered by the prosecuting attorney, the county commission approved the form of the ballot.

Appellees initiated the underlying action on May 18, 1995,[2] seeking to have the special levy declared "null and void" through a writ of supersedeas. The parties submitted a joint stipulation of facts and briefs, but no

2. The action was timely instituted pursuant to West Virginia Code § 11–8–22 (1995) which provides for a writ of supersedeas "[w]ithin forty days after an order for a levy" has been laid. Since the order was laid by the Board on April 18, 1995, and the writ of supersedeas action was filed on May 18, 1995, the Appellees were within the forty-day period provided by law for challenging the levy order.

testimonial evidence was proffered. In its memorandum of June 14, 1995, which is incorporated by reference in the court's order of same date, the circuit court concluded that the levy order and levy ballot "were not in the form and substance required by W.Va. Code 11–8–16 because the Order and Ballot failed to state the amount of levy proceeds to be applied to each identified purpose." The Board appeals the conclusion reached by the circuit court.

\* \* \*

This case of first impression presents a question regarding what information is required to be stated in an order providing for a special election to increase levies pursuant to the language of West Virginia Code § 11–8–16 (1995) and subsequently, on the election ballot itself.[3] West Virginia Code § 11–8–16 provides, in pertinent part:

A local levying body may provide for an election to increase the levies, by entering on its record of proceedings an order setting forth:

(1) *The purpose for which additional funds are needed;*

(2) *The amount for each purpose;*

(3) The total amount needed;

(4) The separate and aggregate assessed valuation of each class of taxable property within its jurisdiction;

(5) The proposed additional rate of levy in cents on each class of property;

(6) The proposed number of years, not to exceed three, to which the additional levy applies, except that in the case of

county boards of education the proposed number of years shall not exceed five;

(7) The fact that the local levying body will or will not issue bonds....

*Id.* (emphasis supplied).

The Board's position is that only two purposes are stated on the election order. Those purposes are separately designated by the denotation "a." and "b." According to the Board, "a." refers to personnel expenses and "b." to non-personnel expenses.[4] Because a corresponding total dollar figure was provided for each of the two purposes, the Board maintains that the requirements of West Virginia Code § 11–8–16 were met. Recognizing that "[t]he true interpretation of the language of a special levy proposal is the meaning given to it by the voters of the county, who, by their approval of the special levy, consent to be taxed more heavily to provide the necessary funds[,]" Syl.Pt. 1, *Thomas v. Board of Educ.*, 164 W.Va. 84, 261 S.E.2d 66 (1979), the Board cites the taxpayers' approval of the levy as evidence that the voters understood the purposes of the levy and agreed to be taxed in excess of what is required by law in order to effectuate those purposes.

Appellees challenge the Board's failure to state an amount for each of the eleven purposes [5] they identify within the election order.[6] Maintaining that the requirement of West Virginia Code § 11–8–16 concerning the statement of an amount for each purpose is clear and without ambiguity, Appellees contend that the issue in need of resolution is whether "the funds from the excess levy

---

**3.** West Virginia Code § 11–8–17 provides that *the form of the ballot* used at a levy election shall be "according to the [election] order[.]" Based on the required use of the election order format for the special election ballot, Appellees claim that the Board failed to comply with West Virginia Code § 11–8–17 by failing to delineate separate expense approximations for each of the eleven purposes that Appellees argue were included on the ballot. Essentially, Appellees' contention is that by violating West Virginia Code § 11–8–16, an automatic violation of West Virginia Code § 11–8–17 occurs since the latter statute incorporates the former.

**4.** The terms "personnel" and "non-personnel" do not appear on the election order or ballot, however.

**5.** Appellees calculate eleven purposes by viewing each of the separately delineated items—three under "a." and eight under "b."—as individual purposes.

**6.** Because the statute which deals specifically with the purpose requirement at issue here is West Virginia Code § 11–8–16, we will refer throughout this opinion to the requirements of the election order, rather than the ballot. Since West Virginia Code § 11–8–17 incorporates by reference the use of the election order language required by West Virginia Code § 11–8–16 as the ballot language, any references in this opinion to the election order requirements similarly apply to the levy ballot.

were to be used for eleven (11) or two (2) ends, intentions, aims, objects, plans or projects." Appellees conclude that the disparate items listed under the heading "b." could not even arguably be viewed as constituting only one purpose, and, accordingly, the Board failed to comply with the statutory requirement of providing an expenses figure for each stated purpose.

Like the circuit court, we first review our decisions involving special levies. In *Jarrell v. Board of Education*, 131 W.Va. 702, 50 S.E.2d 442 (1948), we considered whether a board of education could complete only a portion of the multiple building projects that had been authorized by two separate levy elections. We held in *Jarrell*, that

> [t]he expenditure of the funds for the completion of the projects so selected, to the exclusion of the other unfinished specified projects, would constitute an unlawful diversion of the funds from the purposes for which they were authorized by the voters and will be prohibited in a proceeding instituted by a taxpayer of the county to prevent such proposed action of the board.

*Id.* at 702, 50 S.E.2d at 442, Syllabus, in part. The holding of *Jarrell* is predicated on the following precepts concerning levies:

> 'There is no power or authority in the county court or any other tribunal to apply a fund to a purpose other than that for which it was ordained and created by a vote of the people. *As to the application of such a fund the will of the electors is supreme.* Without their consent no debt can be imposed upon them, no liability assumed and no money raised or appropriated by the county tax levying bodies beyond the limitation prescribed by law ... *[W]hen he [the taxpayer] has consented to be taxed ... the fund, when raised, can not be appropriated and expended otherwise than as ordained by him....'*

*Id.* at 708, 50 S.E.2d at 445 (quoting *Harner v. Monongalia County Court*, 80 W.Va. 626, 631, 92 S.E. 781, 784 (1917)) (emphasis supplied).

These principles were reiterated in *Thomas v. Board of Education*, 164 W.Va. 84, 261 S.E.2d 66 (1979), where we considered whether excess levy funds authorized for salary supplements for teaching and non-teaching personnel had to be used for the approved purpose or whether the levy funds could be used to help meet financial needs created by implementation of a minimum pay scale. We held that

> [a]s the purpose of the levy which the voters approved at the polls was to provide a supplement to the state minimum salary, there is no question that the levy funds were required to be spent for that purpose. Funds derived from a special levy may be expended only for the purpose for which they are approved. W.Va.Code § 11–8–25. Any expenditure of levy funds in an unauthorized manner or for an unauthorized purpose constitutes an unlawful diversion of funds. W.Va.Code § 11–8–26; *Jarrell v. Board of Education*, ....

164 W.Va. at 90, 261 S.E.2d at 70, and Syl.Pt. 2. We further recognized: "The general rule is that the purpose for which funds were raised at a special election levy is determined by the proposal approved by the voters at the polls." 164 W.Va. at 88, 261 S.E.2d at 69; *see also Charleston Transit Co. v. Condry*, 140 W.Va. 651, 659, 86 S.E.2d 391, 396 (1955) (discussing constitutional amendment approval and noting "The people make them [constitutions][,] the people adopt them, the people must be supposed to read them, with the help of common-sense...." (quoting 1 Story on the Constitution, 5th ed., Sec. 451)); *Larkin v. Gronna*, 69 N.D. 234, 285 N.W. 59, 63 (1939) ("The people are presumed to know what they want, to have understood the proposition submitted to them in all of its implications, and by their approval vote to have determined that this amendment is for the public good and expresses the free opinion of a sovereign people.").

The final case considered by the circuit court was *Bane v. Board of Education*, 178 W.Va. 749, 364 S.E.2d 540 (1987), a case which involved the issue of whether a local board of education had discretion to allocate special levy funds approved for salary supplements. We permitted the discretionary allocation of salary supplements in *Bane* because

> [u]nlike the special levy in *Thomas*, the language of the special levies in the pres-

ent case did *not* require the county board of education to pay a specific salary supplement in a *fixed* amount to *each* of the service personnel employed by the board. Instead, the special levies here required the special levy funds *in the aggregate* to be used as salary supplements and to extend services. *The language of the special levies here delegated to the Board the discretion as to the manner in which it would allocate the salary supplements and extended services among the service personnel.* All of the special levy funds in the present case *were* expended for the purposes for which they were authorized by the voters.

178 W.Va. at 753–54, 364 S.E.2d at 544–45 (emphasis supplied).

In the instant case, the circuit court concluded that the Board's failure to designate separate expense figures for each of the enumerated purposes was an attempt to circumvent the requirement recognized in *Jarrell* that "fund[s], when raised, cannot be appropriated and expended otherwise than as ordained by . . . [the taxpayer]." 131 W.Va. at 708, 50 S.E.2d at 445 (quoting *Harner,* 80 W.Va. at 631, 92 S.E. at 784). Declaring the Board's designation of the purposes listed on the election order as either "personnel" or "non-personnel" to be "sophistry," the lower court determined that the Board could not defeat the principles articulated in *Jarrell* "by combining disparate expenditures into two broad groups." The circuit court concluded that the election order and the ballot were not in compliance with the requirements of West Virginia Code § 11–8–16 because they "failed to state the amount of levy proceeds to be applied to each identified purpose."

\*　　\*　　\*

█ Given that none of this Court's prior decisions are dispositive of the issue before us, our analysis must continue with the statute itself. West Virginia Code § 11–8–16 requires that "(1) [t]he purpose for which additional funds are needed[ ]" and "(2) [t]he amount for each purpose[ ]" be set forth in

the election order providing for a special levy election. According to the parties, the crux of the dispute between the parties centers on the meaning of the term "purpose." [7] The Board argues that the term "purpose" as used in West Virginia Code § 11–8–16 should be defined consistent with the "everyday, ordinary meaning" attributed to such term. With little further explanation, the Board maintains that it complied with the statutory requirements of identifying the levy's purposes and the expenses associated with achieving such purposes by designating personnel items under the subheading "a." and non-personnel items under the subheading "b." on the election order. The Board contends that Appellees "place[ ] a strained interpretation upon the word 'purpose' by asserting that there were 'eleven separate purposes for which additional funds were needed, divided into two categories.' " Conversely, Appellees conclude that because a purpose is commonly viewed as "something set up as an object or end to be attained," the election order at issue contained eleven, rather than two, purposes. Webster's Ninth New Collegiate Dictionary 957 (1983).

█ "Generally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use." Syl. Pt. 4, *State v. General Daniel Morgan Post 548, V.F.W.,* 144 W.Va. 137, 107 S.E.2d 353 (1959). More recently, we stated, "[g]enerally, words are given their common usage." *State ex rel. Frazier v. Meadows,* 193 W.Va. 20, 23, 454 S.E.2d 65, 68 (1994). Applying these rules of statutory interpretation to the case sub judice, we determine that in the absence of further legislative definition, the term "purpose" must be accorded its common meaning. Accordingly, the term "purpose" within West Virginia Code § 11–8–16 must be viewed consistent with ordinary usage—that is, "an object or end to be attained." Our resolution regarding how the term "purpose" should be defined, however, does not settle this matter, as we have no further illumination by the legislature with

---

7. Upon analysis, both parties rely upon the commonly accepted definition of the term "purpose." The actual disagreement among the parties relates to the degree of specificity required to comport with West Virginia Code § 11–8–16.

regard to the degree of specificity intended by the statute. In the absence of such legislative edification, it appears that the statute does not preclude the listing of such purpose(s) in very general terms. *See* W.Va. Code § 11–8–16. Furthermore, if a board of education states the purpose of a special levy in broad general terms, then the statutory requirement that the amount for such purpose be stated would be satisfied by a figure likewise not broken down with any greater specificity.

■ Thus, because the requirement of West Virginia Code § 11–8–16 that a purpose be set forth in an election order for the levy of additional taxes is couched in very general language, a general statement of purpose meets the statutory requirement. However, once specific purposes are enunciated, corresponding amounts for each purpose must be stated. Although part a. of the instant levy order contained three components, they clearly are related and could be could summarized as salary and benefits for personnel. Thus, it would appear that paragraphs (1), (2), and (3) were so closely related that the Board complied with the requirements of West Virginia Code § 11–8–16 that a purpose and amount be stated with regard to part a. However, it would be difficult to argue that the vastly disparate purposes set forth in part b. could be characterized as stating one purpose. For that reason, the Appellant did not comply with the statutory requirements of setting forth a corresponding amount for each purpose stated with regard to part b.

■ From the standpoint of sound public policy, our determination that a purpose may be stated broadly under the meaning of West Virginia Code § 11–8–16, is made with a certain degree of reservation. Since a taxpayer's vote in favor of a levy constitutes a "consent to be taxed" and because "[w]ithout th[is] consent no debt can be imposed ... and no money raised[,]" it would appear that

the better practice for a school board would be to offer its taxpayers a delineation of purposes in terms that are specific enough to provide the taxpayers with notice of what they are being asked to approve along with accompanying specific amounts for each purpose. *Jarrell*, 131 W.Va. at 708, 50 S.E.2d at 445 (quoting *Harner*, 80 W.Va. at 631, 92 S.E. at 784). Because taxpayers are consenting to be taxed in excess of what the law requires when they approve excess levies, providing full and complete information to them so that an informed decision can be made would seem to be good public policy. For this reason, the Court urges the Legislature to examine this issue and pass legislation setting forth with specificity the type and information which must be provided to taxpayers before they are called upon to approve an excess levy.

With regard to Appellant's call for some measure of discretion in the expenditure of special levy funds,[8] some degree of flexibility is available to boards of education through use of a "catch-all" clause, which is used by many of the thirty-nine counties currently having excess school levies in effect. This language authorizes the local board of education to use its discretion in expending any excess funds once the objectives of the levy have been met. For example, the levy in effect for Wyoming County provides as follows:

> In the event that sufficient State, Federal, or other special funds become available to provide monies for any of the above purposes, levy monies specified for these purposes may be used for the general operation of the school system. The Board of Education is hereby authorized and empowered to expend at the end of each fiscal year, during the term of this Levy, the surplus, if any, occurring in excess of the amount needed for any of the above stated purposes for the enrichment, supplementa-

---

8. In support of its position that discretion is necessary, the Board cites the fact that discounts are often offered by publishers if purchases are made in May or June rather than July, thereby offering the Board the opportunity to save tens of thousands of dollars when replacing outdated textbooks. The Board posits that "had ... [it] specified an amount for textbooks for each year

of the levy, the board would be unable to take advantage of such discounts if levy funds had already been expended for that year for other textbook items." Additionally, the Board argues that it is impossible to undertake a five-year assessment with a high degree of reliability and therefore, flexibility is "necessary to operate efficiently and responsibly."

tion and advancement of all educational programs in Wyoming County, and other purposes pertinent to the operation of the schools of said county....

Another paradigm of this language is found in the Berkeley County levy, which provides that:

> The Board of Education of the County of Berkeley is hereby authorized and empowered to expend, during the term of this levy, the surplus, if any, accruing in excess of the amounts needed for any of the above stated purpose[s], plus excess collections due to increased assessed valuations for the enrichment, supplementation, operation, and improvement of educational services and/or facilities in the public schools of the County of Berkeley.

Such "catch-all" language properly anticipates the possibility of funds in excess of the stated needs on a levy and further authorizes the discretionary use of such excess funds consistent with those needs approved by the voters.

■ Our ruling in this case regarding the need for designated expenses corresponding to expressly delineated purposes is prospective in nature. We discussed the various rationales for prospective rulings in *Winkler v. State School Building Authority*, 189 W.Va. 748, 434 S.E.2d 420 (1993), recognizing in that case that the voiding of revenue bonds "would bring considerable financial chaos to the State." *Id.* at 764, 434 S.E.2d at 436; *see generally Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 349–50, 256 S.E.2d 879, 889 and Syl.Pt. 5 [9] (1979). Prospective application is clearly favored in this instance of statutory interpretation, given the disparity among the various school boards of this state with regard to the manner in which levy purposes and accompanying costs have been stated.[10] This disparity among the state's school boards in their approach to levy specificity may have resulted from the perception that this is an area of settled law, when in fact it was merely previously unchallenged law. Furthermore, many school systems could be disastrously affected by the retroactive application of law to this previously uncharted arena. In concluding that prospective application is warranted in this case, we rely upon the involvement of sub-

---

9. In syllabus point 5 of *Bradley*, we held that:

> In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions.

163 W.Va. at 332–33, 256 S.E.2d at 880–81.

10. Appellees represent in their brief that at least twenty-two of the thirty-nine counties that cur-

rently have in effect excess school levies list each purpose separately with an amount supplied for meeting such purpose. Those counties include: Berkeley, Doddridge, Greenbrier, Lewis, Lincoln, Putnam, Richie, Taylor, Hampshire, Logan, Jackson, Mason, Marion, McDowell, Mingo, Monongalia, Nicholas, Ohio, Wyoming, Harrison, Fayette, and Pleasants. In contrast, however, seventeen of the thirty-nine counties have levies in effect which state the respective purpose(s) in extremely vague fashion. For example, the levy in effect for Kanawha County provides:

> (1) The purpose for which such additional funds are needed is the payment of the general current expenses of The Board of Education of the County of Kanawha, including, but not limited to, payment of salaries to teachers and other employees ..., including minimum salaries fixed by law, and supplemental salaries and benefits paid by said Board; the repair, maintenance, and operation of school building, facilities, and equipment; the purchase of textbooks, library books, and instructional supplies and equipment; to provide for school buses and the transportation of pupils; and the providing of special education, health services, and career and adult education programs.
>
> (2) The approximate amount considered necessary for said purposes in said five (5) years is the sum of $26,772.457.00 annually.

stantial public issues of "vital interest" to the taxpayers and particularly, the profound effect that invalidating the levy would have on the financial well-being of an entire county school system. *State ex rel. Holmes v. Gainer,* 191 W.Va. 686, 693, 447 S.E.2d 887, 894 (1994).

Based on the foregoing, we reverse the decision of the Circuit Court of Mercer County, but expressly limit our ruling in this case to prospective application.

Reversed.

MILLER, Retired Justice, sitting by temporary assignment.

ALBRIGHT, J., did not participate.